# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV<br><br>                Plaintiffs,<br><br>v.<br><br>MELISSA DATA CORP, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>                Defendants. | Civil Action No. 1:24-cv-04292-HB |

---

## BRIEF OF DEFENDANT MELISSA DATA CORPORATION.
## IN OPPOSITION TO PLAINTIFFS' MOTION
## TO COMPEL PERSONAL JURISDICTION DISCOVERY

---

**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
Tel: (973) 538-0800
Fax: (973) 538-1981
Email: MOMullan@RIKER.com
*Attorneys for Defendant Melissa Data Corporation*

*On the Brief:*
Michael P. O'Mullan, Esq.
Omar Marouf, Esq.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHROTIES ...................................................... ii

BACKGROUND ................................................................2

ARGUMENT ....................................................................3

I.    PLAINTIFFS' MOTION IS PREMATURE ...................................4

II.   THE DISCOVERY REQUESTS OVERREACH AND ARE
      DISPROPORTIONATE TO THE NARROW JURISDICTIONAL
      INQUIRY.................................................................6

III.  PLAINTIFFS RELIANCE ON THE *CALDER'S* EFFECTS TEST TO
      COMPEL MELISSA TO PRODUCE MERTIS DISCOVERY SHOULD BE
      REJCECTED ...........................................................8

      1.    The Calder "Effects" Test Does Not Apply in This Case Because
            Daniel's Law is Not an Intentional Tort ..............................9

      2.    Melissa Did Not Aim its Conduct At New Jersey ...........................10

IV.   MELISSA'S DISCOVERY RESPONSES ARE NOT DEFICIENT ............16

      1.    Melissa's Responses to Plaintiff's Interrogatories are sufficient and
            adequate ...........................................................16

      2.    Melissa Provided Responses to All of Plaintiffs Relevant Requests for
            Production of Documents.................................................22

CONCLUSION ....................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Antico v. Ram Payment, LLC,*
  No. 20-cv-12130, 2024 U.S. Dist. LEXIS 174303 (D.N.J. Sept. 26, 2024) ..........7

*Atlas Data Privacy Corp. v. We Inform, LLC,*
  758 F. Supp. 3d 322 (D.N.J. 2024) ..................................................................9, 29

*Booker v. Twp. of Cinnaminson,*
  No. 12-cv-2786¸ 2012 U.S. Dist. LEXIS 147609 (E.D. Pa. Oct. 5, 2012) ..........21

*Briskin v. Shopify, Inc.,*
  135 F.4th 739 (9th Cir. 2025) ..................................................................14, 15, 19

*Click Go and Buy Inc. v. IT Assets, Inc.,*
  No. 24-cv-0744, 024 U.S. Dist. LEXIS 234578 (D.N.J. Dec. 31, 2024) ............12

*Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.,*
  No. 10-cv-1559, 2014 U.S. Dist. LEXIS 51525 (M.D. Pa. Apr. 15, 2014) ..24, 30

*Hankins v. Doubletree Mgmt., LLC,*
  No. 19-cv-8698, 2022 U.S. Dist. LEXIS 134989 (D.N.J. July 29, 2022) ............22

*Hasson v. FullStory, Inc.,*
  114 F.4th 181 (3d Cir. 2024) .......................................................................*passim*

*Hurley v. Cancun Playa Oasis Int'l,*
  No. 99-cv-574, 1999 U.S. Dist. LEXIS 13716 (E.D. Pa. Aug. 31, 1999) ...........22

*IMO Indus., Inc. v. Kiekert AG,*
  155 F.3d 254, 265-66 (3d Cir. 1998) .....................................................12, 13, 25

*Ingrao v. AddShoppers, Inc.,*
  No. 24-cv-1022, 2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024)........13

*Johnson v. City of Atl. City, Civ.*
  No. 05-cv-4329, 2007 U.S. Dist. LEXIS 107150 (D.N.J. Mar. 7, 2007) .............6

*Lincoln Benefit Life Co. v. AEI Life, LLC,*
  800 F.3d 99 (3d Cir. 2015) ....................................................................................6

*Lloyd-Jones v. Connolly*,
   No. 20-cv-912, 2022 U.S. Dist. LEXIS 148894 (D.N.J. Aug. 19, 2022) ..............3

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) ..................................................... 9, 11, 13

*Mesadieu v. Martinez*,
   No. 18-cv-842, 2023 U.S. Dist. LEXIS 70805 (D.N.J. Apr. 24, 2023) ...............5

*Mithril GP Emp. Feeder LLC v. McKellar*,
   No. 19-cv-2144, 2020 U.S. Dist. LEXIS 104382 (D. Del. June 15, 2020) ..........6

*Newman v. N.C. Ins. Underwriting Ass'n*,
   No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387 (D.N.J. Nov. 9, 2020) ......20, 28

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007) ...............................................................28

*Rhodes v. Azeff*,
   No. 22-cv-101, 2025 U.S. Dist. LEXIS 15531 (W.D. Pa. Jan. 29, 2025) ..........13

*Rieu v. RVT Wrangleboro Consumer Square, LLC*,
   No. 19-cv-18390, 2020 U.S. Dist. LEXIS 194027 (D.N.J. Oct. 20, 2020) ..........5

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*,
   750 F.3d 1178 (10th Cir. 2014) ........................................................10

*RP Healthcare, Inc. v. Pfizer, Inc.*,
   No. 12-cv-5129, 2017 U.S. Dist. LEXIS 162380 (D.N.J. Sept. 29, 2017) ..........20

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3d Cir. 2018) .................................................................3

*Thomas v. Papa John's Int'l, Inc.*,
   No. 24-3557, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) ..............15

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
   No. 11-cv-4574, 2012 U.S. Dist. LEXIS 29294 (E.D. Pa. Mar. 6, 2012) ............6

*UMAC, Inc. v. Aqua-Gas AVK*,
   No. 04-cv-4022, 2005 U.S. Dist. LEXIS 6124 (E.D. Pa. Mar. 30, 2005) ..........21

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) .................................................................12

*Walden v. Fiore*,
  571 U.S. 277 (2014) .........................................................................10

**Rules**

Fed. R. Civ. P. 1 .................................................................................8

Fed. R. Civ. P. 26 ...............................................................................4

L. R Civ. R. 37.1 .......................................................................... 4, 5, 6

Defendant Melissa Data Corporation ("Melissa") respectfully submits this brief in opposition to Plaintiffs' motion to compel personal jurisdictional discovery ("Motion")[1].

## BACKGROUND

Plaintiffs' Motion should be denied because the discovery they seek is irrelevant to the limited jurisdictional issue before the Court. Rather, Melissa has already produced discovery showing it has no systematic connections to New Jersey. For example, Melissa is not incorporated or headquartered in New Jersey and does not have any employees or agents in New Jersey. Melissa advised Plaintiffs that they do not target or serve New Jersey in any other manner as compared to other jurisdiction, whether by marketing or any other operation. Instead Plaintiffs seek improper one-sided merits based discovery to pass off as jurisdictional discovery.

On April 2, 2025, the Court authorized Plaintiffs to serve limited jurisdictional discovery requests on Melissa. On April 14, 2025, Plaintiffs proceeded to serve sixteen (16) Interrogatories and twenty-three (23) Requests for Production seeking discovery that goes beyond the limited issue of jurisdiction and attempts to reach the ultimate issues in this case. Melissa responded by disclosing information and producing documents to Plaintiffs that are relevant to the limited issue of jurisdiction, which is the only issue this Court authorized Plaintiffs to seek discovery

---

[1] The Motion is filed on the docket as ECF No. 76.

1

on. On June 4, 2025, Plaintiffs served sent one letter ("the Letter") addressed to all thirteen (13) defendants that are subject of this Motion. *See* ECF No. 76-3. Plaintiffs Letter did not include any specifics as to why they believe some of Melissa's responses were deficient. *Id.* Rather, the only specific mention of Melissa was in Appendix A to the Letter, and it merely included a list of interrogatories and requests of production that Plaintiffs, without any specific explanation or basis asserted, claimed Melissa's responses were deficient. *Id.* On June 9, 2025, Melissa's counsel participated in a "group meet and confer" that included Plaintiffs counsel and several other counsel for the defendants who are subject to this motion. *See* Declaration of Omar Marouf dated July 14, 2025 ("Marouf Dec.") ¶8. During said meet and confer, several of the counsel for the defendants, including counsel for Melissa, informed Plaintiffs counsel that an individual meet and confer would be necessary *Id.* at ¶9. Plaintiffs counsel never reached out to Melissa's counsel – neither prior or after the case management conference that was held before the Honorable Judge Harvey Bartle III. *Id.* at ¶10-12. Plaintiffs filed this motion without a proper meet and confer or a proper deficiency letter explaining their positions and basis as to their claimed deficiencies. Melissa was informed of the vast majority of Plaintiffs' basis after it was served with the motion.

Needless to say, Plaintiffs' claimed deficiencies rely on the flawed argument, which contrary to this Court's prior decision, that Daniel's Law is an intentional tort.

2

Plaintiffs also rely on case law from a sister Circuit that is completely contradictory to the Third Circuit's controlling decisions.  It is worth noting that the majority of the improper and irrelevant merit-based discovery revolves around Plaintiffs' argument that their theory of jurisdiction lies in the *Calder* effects test. However, this theory of jurisdiction was absent from Plaintiffs' Complaint and their Letter, and Plaintiffs counsel made no mention of it in the group meet and confer to attempt to justify their irrelevant requests for merits discovery.

## **ARGUMENT**

On a motion to compel, the moving party "bears the initial burden of showing the relevance of the requested information. The burden then shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones v. Connolly*,   No. 20-cv-912, 2022 U.S. Dist. LEXIS 148894, at *18 (D.N.J. Aug. 19, 2022). "[J]urisdictional discovery is not a license for the parties to engage in a fishing expedition and [] the District Court should take care to circumscribe the scope of discovery to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted). As the Third Circuit has explained, this is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure," which require discovery to be proportional to the needs of the case. *Id.* District courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction,"

3

taking into account the proportionality factors under Federal Rule of Civil Procedure 26(b)(1). *Id.*

Plaintiffs fail to meet their burden and their Motion should be denied in its entirety.

## I.    PLAINTIFFS' MOTION IS PREMATURE

As a threshold matter, the Motion should be denied for the simple reason that Plaintiffs failed to comply with Local Rule 37.1 by failing to hold a meaningful meet and confer with Melissa individually, but instead rely on a single group meet and confer discussion that did no specifically address Melissa's discovery responses. Local Rule 37.1(b) specifically provides as follows:

> Discovery motions must be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement. The affidavit, or other document complying with 28 U.S.C. § 1746, shall set forth the date and method of communication used in attempting to reach agreement.

L. Civ. R. 37.1(b)(1). Conspicuously absent from the declaration submitted by Plaintiffs' counsel is any reference to "a good faith effort to resolve by agreement the issues raised by the motion." Instead, the declaration merely states that "[o]n June 9, 2025, the parties met and conferred to resolve these disputes over discovery but remained at an impasse." ECF No. 76-1, ¶ 8.

4

Plaintiffs' counsel never reached out subsequently to schedule an individual meet and confer to properly discuss the contents of the Letter Marouf Dec. ¶10-12, nor did they serve any meaningful deficiency letter on Melissa setting forth the specific basis for their claimed deficiency as opposed to the general list of alleged deficiencies in Melissa's responses that were stated in the Letter. ECF No. 76-3. Plaintiffs made no effort, much less a good faith effort, in advance of the status conference with the Court on June 16, 2025 to explain to Melissa how, in their view, its responses to the interrogatories and document requests listed in Appendix A to the Letter are deficient and incomplete. Thus, Plaintiffs overlooked their obligation to meet and confer to resolve these disputes prior to filing the Motion. Even after being authorized by the Court to file this motion in the Court's to serve this Motion pursuant to this Courts Order dated June 17, 2025, ECF No. 70, Plaintiffs never made any attempt to individually meet and confer with Melissa prior to filing this motion. Marouf Dec. ¶10-12.

This district has regularly held that failure to comply with Local Rule 37.1 is grounds to deny a motion to compel. *See, e.g.*, *Mesadieu v. Martinez*, No. 18-cv-842, 2023 U.S. Dist. LEXIS 70805, at 7 (D.N.J. Apr. 24, 2023) (holding that "failure to comply with . . . L. Civ. R. 37.1(b)(1) is a sufficient procedural basis upon which to deny Plaintiff's motion" to compel); *Rieu v. RVT Wrangleboro Consumer Square, LLC*, No. 19-cv-18390, 2020 U.S. Dist. LEXIS 194027, at *2-3 (D.N.J. Oct. 20,

2020) (noting that Court denied motion to compel one day after it was filed upon "holding that the motion did not comply with Local Rule 37.1"); *Johnson v. City of Atl. City*, Civ. No. 05-cv-4329, 2007 U.S. Dist. LEXIS 107150, at *3 (D.N.J. Mar. 7, 2007) (denying motion to compel upon "finding that the parties failed to adequately meet and confer in good faith in an attempt to resolve this discovery dispute without court intervention as required by L. Civ. R. 37.1(b)(1)"). Therefore, Plaintiffs motion should be denied.

## II.    THE DISCOVERY REQUESTS OVERREACH AND ARE DISPROPORTIONATE TO THE NARROW JURISDICTIONAL INQUIRY

Notwithstanding Plaintiffs' failure to comply with Local Rule 37, Plaintiffs' misplaced overreach to reach merits discovery through their jurisdictional discovery demands serves as an independent compelling reason to deny the Motion. As courts in this Circuit routinely hold, "jurisdictional discovery should be narrowly tailored, and 'a few responses to interrogatories will often suffice.'" *See, e.g.*, *Mithril GP Emp. Feeder LLC v. McKellar*, No. 19-cv-2144, 2020 U.S. Dist. LEXIS 104382, at *4 (D. Del. June 15, 2020) (quoting *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 109 (3d Cir. 2015)). Plaintiffs nevertheless served on Melissa a total of sixteen (16) interrogatories, as well as twenty-three (23) document requests seeking information and documents that do not remotely relate to the limited issue of Melissa's contacts with New Jersey. These requests are overbroad and exceed the

limited scope of ordinary jurisdictional discovery. *See TruePosition, Inc. v. LM Ericsson Tel. Co.*, No. 11-cv-4574, 2012 U.S. Dist. LEXIS 29294, at *14-15 (E.D. Pa. Mar. 6, 2012) (stating that jurisdictional discovery "is not nearly as intrusive as merits discovery" and requiring requests to be "specific and adequately tailored to the jurisdictional issue at hand").

Despite the objectionable nature of much of this discovery that in large parts went beyond the jurisdictional issue and attempted to improperly reach the merits, Melissa provided answers to interrogatories and produced multiple pages of responsive documents that bear on the personal jurisdiction inquiry. Plaintiffs do not refute this. The attempt by Plaintiffs to obtain additional information from Melissa – much of which goes to the merits of the case and thus is impermissible at this threshold stage – should be rejected. *See Antico v. Ram Payment, LLC*, No. 1:20-cv-12130, 2024 U.S. Dist. LEXIS 174303, at *6 (D.N.J. Sept. 26, 2024) ("Jurisdictional discovery should not . . . serve as a fishing expedition into the underlying merits, all while under the guise of jurisdictional discovery.").

The information that Plaintiffs seek to compel from Melissa is grossly disproportionate to the discrete question of personal jurisdiction such as attempting to compel Melissa to disclose the identity of its employees, officers, directors and

vendors who have no contact to New Jersey. *See* Plaintiffs' Interrogatory No. 3.[2] This scorched earth discovery approach to mere jurisdictional discovery is asserted under the guise of a jurisdictional theory that is absent from Plaintiffs' Complaint or Letter and is inapplicable to this case.

Thus, consistent with the Third Circuit's directive, this Court should limit any further discovery by denying the Motion. The additional responses that Plaintiffs are pursuing are untethered to any viable theory of personal jurisdiction (as discussed below), plainly go to the merits of the case, seeks an unfair advantage, and will inevitably undermine Rule 1's promise of a "speedy and inexpensive determination of [this] action." Fed. R. Civ. P. 1.

### III. PLAINTIFFS RELIANCE ON THE *CALDER'S* EFFECTS TEST TO COMPEL MELISSA TO PRODUCE MERITS DISCOVERY SHOULD BE REJECTED

Neither Plaintiffs' Complaint nor their Letter to the defendants make any mention of the *Calder* effects test as the theory to assert jurisdiction over Melissa. Even during the group meet and confer that took place between Plaintiffs and a group of the defendants, there was no mention of such jurisdictional theory. It wasn't until this Motion that Plaintiffs informed defendants that they are relying on the effects test to assert jurisdiction over Melissa and the other defendants. Perhaps it is not

---

[2] Per the Court's direction, Melissa provided a copy of its responses to Plaintiffs interrogatories to chambers by email on May 14, 2025 and a hard copy of May 15, 2025.

surprising that Plaintiffs now resort to invoke the effects test to make a twisted argument to compel the production of discovery that solely go to the merits of this case. To invoke the *Calder* effects test, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024). Crucially, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state." *Id.* at 191. For that reason, courts need not consider the first two prongs of the test unless the third prong is satisfied. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

### 1. The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not an Intentional Tort

Plaintiffs concede that the *Calder* effects test only applies to intentional torts. In fact, this Court found that Daniel's Law lack a specific standard of liability in its decision dated November 26, 2024, explaining "the court concludes that Daniel's Law does not mandate a specific intent standard of liability." *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024) ("Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available [information] after the statutory deadline had expired."). Plaintiffs'

generic reference to "willful non-compliance" in the prayer for relief seeking punitive damages to circumvent that they never alleged any facts that suggest Melissa acted intentionally serves nothing more than a desperate attempt to twist an argument to compel Melissa to provide one-sided discovery that exclusively goes to the merits of this case. Nowhere in Plaintiffs' Complaint is there reference to a single fact describing the "willful misconduct" Plaintiffs' now claim to have alleged in their Motion. Plaintiffs desperate attempt to turn the parroting of a legal conclusion to invent an after-the-fact allegation of willful misconduct is more evidence that the *Calder* effects test does not apply to this case. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

### 2. Melissa Does Not Aim Its Conduct at New Jersey

The Third Circuit's recent decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), clarifies that the *Calder* effects test and the traditional "purposeful availment" test for specific jurisdiction are analytically distinct. The Court

emphasized that the two tests are "cut from the same cloth" but "have distinct requirements." *Id.* at 189 (quoting *Marten*, 499 F.3d at 297). Importantly, *Hasson* held that defendant's mere "knowledge" that a plaintiff in the forum will be harmed does not show that its actions "expressly targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. *Hasson*, 114 F.4th at 196 ("We have rejected the argument that the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") (internal quotations omitted).

Applying those principles, the *Hasson* Court found that the plaintiff had failed to establish jurisdiction under either test. Although the underlying claim there was wiretapping– a statutory tort with an intentional conduct requirement – the plaintiff's failure to plead express forum targeting defeated jurisdiction under *Calder*, and his inability to show that the claims "arose out of or related to" Papa John's in-forum contacts foreclosed jurisdiction under the traditional test as well. *Id.* at 190-92.

In the wake of the Third Circuit's decision in *Hasson*, several district courts have applied its clarified framework for specific personal jurisdiction. The following three cases—*Click Go*, *Rhodes*, and *Ingrao*—are the most recent and instructive examples.

In *Click Go and Buy Inc. v. IT Assets, Inc.*, No. 24-cv-0744, 024 U.S. Dist. LEXIS 234578, at *20 (D.N.J. Dec. 31, 2024), the court applied the *Calder* "effects" test in light of *Hasson* to a fraud claim, i.e., an intentional tort. The court emphasized that "Calder requires more," and that a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is." *Id.* at 8 (quoting *Hasson*, 114 F.4th at 192). The court noted that plaintiff's theory—that defendant "expressly aimed its tortious conduct" by directing fraudulent communications into New Jersey—failed because plaintiff's location was not known to defendant until after the initial contact. As the court explained, "ultimately learn[ing]" of the plaintiff's location after the fact "does not, in this case, satisfy the 'effects' test's intentionality requirement." *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 n.5 (3d Cir. 2003)). As in *Hasson*, the court stressed that "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." *Id.* at 8 (quoting *IMO Indus.*, 155 F.3d at 263). Rather, a plaintiff must "point to other actions that adequately demonstrate[] that the defendants targeted (or 'expressly aimed' their conduct at) the forum, and thereby show that the forum was the focal point of the tortious activity." *Id.* (internal citation omitted). The court concluded that the brunt of plaintiff's harm may well have occurred in New Jersey, but that was not enough. "Because Plaintiff fails to show that Defendant

12

'manifest[ed] behavior intentionally targeted at and focused on the forum,'" jurisdiction was lacking. *Id.*at 8 (quoting *Marten*, at 298 (3d Cir. 2007)).

In *Rhodes v. Azeff*, No. 22-cv-101, 2025 U.S. Dist. LEXIS 15531, at *15 (W.D. Pa. Jan. 29, 2025), the court dismissed defamation claims for lack of personal jurisdiction, applying *Hasson.* Although the complaint plausibly alleged defamation and harm in Pennsylvania, it did not satisfy the express aiming prong. As the court explained, "'the mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson.*'" *Id.* (Citing *Marten*, 499 F.3d at 299), the court reiterated that a plaintiff must point to "additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct.

In *Ingrao v. AddShoppers, Inc.*, the court elaborated that, "[t]o satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" No. 24-cv-1022, 2024 U.S. Dist. LEXIS 214748, at *26 (E.D. Pa. Nov. 25, 2024). (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)) (emphasis added). While the complaint alleged wiretapping and tracking—both intentional torts—and asserted harm in Pennsylvania, the court found that plaintiffs failed to satisfy either

13

component of the "express aiming" prong. Plaintiffs failed to identify any "specific activity indicating that [AddShoppers] expressly aimed its tortious conduct at the forum." *Id* at *29. The court rejected plaintiffs' assertion that deploying tracking code across retail websites, some of which were accessible to Pennsylvania users, constituted intentional targeting. Quoting *Hasson*, the court noted that a software company does not expressly target Pennsylvania "simply by providing code for" a website accessible in the forum. *Id.* at *30 (quoting *Hasson*, 114 F.4th at 195-96). The plaintiffs attempted to distinguish *Hasson* by noting that AddShoppers had directly emailed them, unlike the software company in *Hasson*, which had no contact with the plaintiff. But the court was not persuaded. Even assuming those emails were received in Pennsylvania, the court concluded that "mere interaction with a plaintiff who resides in the forum does not show conduct targeted at the forum itself." *Id.* at *28 (citing *Hasson*, 114 F.4th at 196).

There is no allegation in the Complaint and Plaintiffs have not pointed to any contacts with New Jersey indicating that Melissa expressly aimed tortious conduct at New Jersey and thereby made New Jersey the focal point of its activity related to this case. For this reason as well, the effects test does not apply.

Plaintiffs attempt to circumvent the Third Circuit's decision in *Hasson* by citing to the Ninth Circuit decision in *Briskin v. Shopify, Inc.,* 87 F.4th 404, 409 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 101 F.4th 706 (9th Cir. 2024),

*and on reh'g en banc*, 135 F.4th 739 (9th Cir. 2025). Plaintiffs cited to *Briskin* ten (10) times in their attempt to justify compelling merits based discovery from Melissa under the guise of seeking discovery on the express aiming prong of the effects test. However, Plaintiffs fail to mention that *Briskin* is completely inapposite to the Third Circuit controlling decision in *Hasson*.

In fact, in a recent decision, the Ninth Circuit, relying on its decision in *Briskin*, reached the complete opposite conclusion as *Hasson* on the issues of express aiming and more generally the existence of jurisdiction in a case that involved similar claims to those asserted in *Hasson* against the same defendant (Papa John's) involving the use of the same tool on Papa John's website that gave rise to the claim (Session Reply Code). *See Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039, at *2-3 (9th Cir. June 18, 2025) ("we reject Papa John's argument that it did not expressly aim its conduct at California") (citing *Briskin*, 135 F.4th at 754).

Plaintiffs all but concede that they do not allege facts that Melissa's conduct (or website) targeted New Jersey as they rely on a baseless claim that "the Complaints allege facts sufficient *to infer* that Defendants 'expressly aimed' their tortious activity at New Jersey." (Motion at 7). However, Melissa's knowledge that Plaintiffs are located in New Jersey, as Plaintiffs attempt to rely on *Briskin* to suggest, is insufficient to satisfy the express aiming prong of the effects test. *See*

*Hasson*, 114 F.4th at 196 ("[W]hile a defendant's knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, that alone is insufficient to satisfy the targeting prong of the effects test").[3]

## IV.    MELISSA'S DISCOVERY RESPONSES ARE NOT DEFICIENT

### 1.    Melissa's Responses to Plaintiff's Interrogatories are sufficient and adequate

Of the sixteen (16) interrogatories that Plaintiffs served on Melissa, only six (6) are subject to the Motion – namely, Nos. 3, 6, 7, 8, 9, and 10. Of note, Plaintiffs did not claim any deficiency in Melissa's answer to Interrogatory No 6 in their omnibus Letter addressed to all the defendants, see ECF No. 76-3 or during the group meet and confer.

**Interrogatory No. 3: Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023 been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.**

Melissa appropriately responded to this interrogatory by disclosing the only New Jersey entity it contracts with in relation to the relevant products in this case

---

[3] It is worth noting that Plaintiff's reliance on the effects test in their efforts to seek jurisdictional discovery has been rejected in a related state court action. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("Plaintiffs have not presented factual allegations suggesting with reasonable particularity the possibility of contacts between Defendants and New Jersey as to warrant jurisdictional discovery").

that Melissa offers. Melissa also responded by advising Plaintiffs that it has no officers, directors or employees that are located in New Jersey. Plaintiffs' overbroad and vague interrogatory goes far beyond the limited issue of jurisdiction as it seeks the identity of every employee, director or officer at Melissa and every person or entity Melissa has contracted with in relation to its products identified in its response to Interrogatory No. 1. Melissa's response to Interrogatory No. 4 informed Plaintiffs that Melissa does not target marketing, advertising or promotional materials to New Jersey as compared to any other jurisdiction, and that Melissa has not sent any employee or agent to New Jersey to solicit customers or market its products in New Jersey. Plaintiffs request for the identity of every employee, officer, director or person Melissa contracted with is an improper fishing expedition designed to seek inappropriate merits discovery. Plaintiffs were advised that all the persons (except the sole New Jersey entity Melissa contracts with) about whom seeks to compel disclosure have no connection to New Jersey and have no bearing on the issue of personal jurisdiction over Melissa.

**Interrogatory No. 6: Identify all sources from which Defendant obtained information related to information subject to Daniel's Law, including without limitation entities in New Jersey and any public records made available by the State of New Jersey, any agency or instrumentality of the State of New Jersey, any county, municipality, or other local government in New Jersey, or any agency or instrumentality thereof**

As an initial matter, Plaintiffs' Motion is the first time Melissa was informed by Plaintiffs of their claim that Melissa's response to Interrogatory No. 6 is deficient. Even Plaintiffs' vague and wholesale Letter addressed to all the defendants made no reference to this interrogatory. Nonetheless, even a glance at Melissa's response to Interrogatory No. 6 would indicate that Melissa fully answered the interrogatory, which seeks a disclosure of the sources where Melissa obtained its data. Melissa referred Plaintiffs to its response to Interrogatory No. 5, which answered by providing a list the entities that are the sources of the data, and none of said entities are located in New Jersey. Therefore, Melissa provided a full response to Interrogatory No. 6.

**Interrogatory No. 7: Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law**

Plaintiffs  attempt to make the twisted argument that Melissa's (and other defendants) "compliance efforts specifically directed at New Jersey" bare on the issue of jurisdiction because it shows "knowledge under the effects test" and whether Melissa "systematically served" New Jersey.

First, as explained above, Plaintiffs reliance on the effects test is inappropriate and contradictory to this previous Court's ruling because Daniel's Law is not an

intentional tort. Additionally, the Third Circuit was expressly stated in *Hasson* that "[W]hile a defendant's knowledge that the plaintiff is located in the forum is necessary to the application of Calder, that alone is insufficient to satisfy the targeting prong of the effects test" 114 F.4th at 196. Plaintiffs' reliance on *Briskin* is of no avail as the Ninth reasoning in finding express targeting is contradictory to the Third Circuit's decision in *Hasson*. This interrogatory is an improper fishing expedition to the reach merits and has no connection to the issue of personal jurisdiction.

**Interrogatory No. 8: Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023**

Interrogatory No. 8 is another improper fishing expedition that goes to the merits. The identity of persons involved in responding to takedown notices issued pursuant to Daniel's Law establishes no link between Melissa and New Jersey. In fact, Melissa, in its moving papers to its motion to dismiss for lack of personal jurisdiction, advised Plaintiffs that none of its employees, shareholders, offices, servers are located in New Jersey. *See* Certification of John Melissa Jr. dated March 18, 2025 (ECF No. 50-1) at ¶¶11-17.

Plaintiffs provide no basis as to why this Interrogatory relates to personal jurisdiction, except as to wildly claim that the information is "relevant to determine

who has information regarding Defendant's knowledge of the probable effects of disclosure." However, as stated above the effects test is not applicable in this case. Plaintiffs cannot point to any basis as to why the information sought in this Interrogatory is relevant to the issue of personal jurisdiction.

**Interrogatory No. 9: Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers**

Plaintiffs sole argument as to why this interrogatory is relevant to the issue of jurisdiction is that it is "relevant to establish constructive knowledge under the effects test." Notwithstanding that the effects test is not applicable to case, this interrogatory purely goes to the merits. The District of New Jersey has rejected attempts to seek merits-based discovery disguised as jurisdictional discovery. *See RP Healthcare, Inc. v. Pfizer, Inc.*, No. 12-cv-5129, 2017 U.S. Dist. LEXIS 162380 (D.N.J. Sept. 29, 2017), at *9 (D.N.J. Sept. 29, 2017) (denying plaintiff's discovery request "because it is more akin to facts about liability rather than discovery about the personal jurisdiction issue"). Moreover, "actions taken . . . to respond" to Plaintiffs' unilateral conduct—which is the only information responsive to this Interrogatory—cannot provide a basis for personal jurisdiction. *See, e.g., Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, at *24 (D.N.J. Nov. 9, 2020) ("[Defendant's] phone call and letter . . . were merely

responses to Plaintiff's actions. It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction."); *Booker v. Twp. of Cinnaminson*, No. 12-cv-2786, 2012 U.S. Dist. LEXIS 147609, at *4 (E.D. Pa. Oct. 5, 2012) ("letters sent to [plaintiff] were in response to [plaintiff's] unilateral activity, and thus do not demonstrate the [defendant] deliberately targeted Pennsylvania"); *UMAC, Inc. v. Aqua-Gas AVK*, No. 04-cv-4022, 2005 U.S. Dist. LEXIS 6124, at *11 (E.D. Pa. Mar. 30, 2005) ("contacts [which] constitute responses to unilateral actions by [plaintiff] . . . cannot satisfy the requirement of contact within the forum state").

Moreover, Plaintiffs argument that the communications they are seeking in this interrogatory is more readily available to the defendants is completely inconsistent with their conduct and representation made to the Court. In fact, Plaintiffs' counsel representation the Court during a status conference on June 16, 2025 that they posses the information regarding each assignment and the date each alleged take down notice was sent resulted in the Court entering an order that Plaintiffs provide said information to Defendants *See* ECF No 71.

**Interrogatory No. 10: Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.**

As stated above, Plaintiffs' reliance on the effects test is misplaced as this Court has expressly ruled that Daniel's Law does not assign a standard of liability. Plaintiffs are trying to reverse engineer jurisdiction by attempting to seek information regarding elements of their claim that the defendants violated Daniel's Law. Melissa provided sufficient answers to show that it does not direct any conduct at New Jersey as compared to any other state. *See* Response to Interrogatory No. 4. However, Plaintiffs embarked on this fishing expedition to burden Melissa and other defendants with completely one-sided irrelevant discovery to the issue of jurisdiction. *See, e.g.*, *Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 U.S. Dist. LEXIS 13716, at *9 (E.D. Pa. Aug. 31, 1999) (Bartle, J.) (concluding Pennsylvania lacked jurisdiction because there was no evidence "[defendant's] Web page was directed at Pennsylvania more than any other state"); *Hankins v. Doubletree Mgmt., LLC*, No. 19-cv-8698, 2022 U.S. Dist. LEXIS 134989, at *12 (D.N.J. July 29, 2022) (concluding New Jersey lacked jurisdiction because there was no evidence defendant was "directly targeting its web site to the [forum] state").

### 2. Melissa Provided Responses to All of Plaintiffs Relevant Requests for Production of Documents

Plaintiffs assert that they are entitled to further responses to sixteen 16 of their twenty-three 23 requests for production served on Melissa. Melissa was not even given notice that three of the sixteen (16) requests were at issue as it pertains to

Melissa (Requests Nos. 4, 19, and 20) as Plaintiffs failed to raise them in their Letter or in the group meet and confer it held with defendants' counsel. *See* ECF Nos. 76-3 at Appendix A, 76-4.

**RFP No. 1.d: All documents reflecting or relating to Defendant's [i]nvolvement, participation, or role in the collecting, publishing, disseminating, selling, or providing access to, or otherwise making available information subject to Daniel's Law, including but not limited to the sources, methods, purposes, and recipients of such information.**

As an initial matter, Plaintiffs requests are overly broad and vague. Plaintiffs failed to identify with any reasonable particularity what documents they are seeking in this request. Plaintiffs fail to mention that Melissa referred Defendants to its response to Interrogatory No. 1, which identified the documents produced describing Melissa and its showing its marketing activities, including, its social media marketing that does not signal New Jersey as compared to any other jurisdiction. Plaintiffs' request is a wholesale fishing expedition that is designed to harass Plaintiff is it seeks every contract Melissa has with any vendors, who as Melissa advised, with a single exception, are not located in New Jersey. A significant number of said contracts include confidentiality provisions and are irrelevant to the issue of jurisdiction.

**RFP No. 4:  Produce all communications with or regarding any governmental entity in the State of New Jersey including the Department of Community Affairs and the Office of Information Privacy.**

23

Plaintiffs failed to identify that they are asserting that Melissa's response to this RFP as deficient in its Letter or during the meet and confer. Melissa only learned this assertion when Plaintiffs filed their Motion. Not only did Plaintiffs fail to properly meet and confer with Melissa, Melissa had no notice that Plaintiffs are asserting a deficiency regarding the response to this RFP, which is alone sufficient to deny Plaintiffs Motion. *See Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*, No. 10-cv-1559, 2014 U.S. Dist. LEXIS 51525, at *12 (M.D. Pa. Apr. 15, 2014) (denying motions to compel discovery, and stating "it appears that no good faith effort was made whatsoever to resolve or narrow the discovery disputes at issue prior to filing").

Notwithstanding Plaintiffs failure to properly meet and confer on this RFP, Melissa responded that it did not have any communications with any New Jersey governmental entity in the last five years. Plaintiffs now assert that this response is insufficient because "communications regarding entities like OIP are relevant to whether the Defendant knew about but nonetheless intentionally violated Daniel's Law after receiving nondisclosure requests from covered persons." As stated above, the effects test is not applicable to this case as it is not an intentional tort. Moreover, had Plaintiffs made a an attempt to individually meet and confer with Melissa, they would have been advised that Melissa has no documents regarding communications with or regarding the OIP.

24

**RFP No. 5: All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.**

This request seeks merits-based discovery. Plaintiffs continued reliance on the inapplicable effects test (as well as the Ninth Circuit decision in *Briskin*, which contradicts Third Circuit precedent) is sufficient to deny Plaintiffs request to compel production for this RFP. Moreover, while Plaintiffs assert that communications with New Jersey residents are relevant under *Calder* (Motion at 24), Third Circuit case law is clear that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *IMO Indus.*, 155 F.3d at 263.

**RFP No. 6: All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.**

Plaintiffs again rely on the inapplicable effects test to justify this irrelevant request to the issue of discovery. Notwithstanding Plaintiffs improper fishing expedition in relaying on an inapplicable theory of jurisdiction, Melissa does not rely on any "related entity" to address "Daniel's Law" requests. Plaintiffs could have avoided including Melissa in this request by simply holding a simple meet and confer with Melissa individually.

**RFP No. 7: All documents reflecting or relating to Defendant's policies, procedures, or practices for**

    a. **Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.**

    b. **Handling information related to New Jersey residents.**

**RFP No. 10: Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation.**

**RFP No. 11: Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.**

        RFPS 7, 10 and 11 all seek improper and irrelevant discovery. As an initial matter, Plaintiffs argument that Melissa's internal policies are relevant because they may show "that Defendants systematically served New Jersey" lacks any merit. Melissa provided responses evidencing it has no systematic connections to New Jersey. For example, Melissa is not incorporated or headquartered in New Jersey and does not have any employees or agents in New Jersey. Melissa advised Plaintiffs that they do not target or serve New Jersey in any other manner as compared to other jurisdiction, whether by marketing or any other operation. As to their argument that the documents requested are relevant under the effects test, that argument is to no

avail because, among other reasons stated above, Daniel's Law is not an intentional

tort.

**RFP No. 12: Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.**

Plaintiffs argue that the existence of opt-out or suppression mechanism

somehow meant that the defendants are aware of the potential harms that non-

compliance with Daniel's Law is wholly nonsensical. Notwithstanding the absurdity

of this argument, Plaintiffs reliance on the effects test and its misapplication of its

prongs is the fatal flaw in Plaintiffs' improper fishing expedition.

**RFP No. 13: Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.**

Plaintiffs again rely on the effects test to support their argument that they are

entitled to the documents requested in this RFP. That argument is to no avail for the

same reasons stated above.

Plaintiffs further argue that these documents are relevant under the purposeful

availment test. However, Plaintiffs argument under purposeful availment fares no

better. Plaintiffs claims fails an essential element of purposeful availment as their

claims do not arise out of or relate to Melissa's purposeful contacts with New Jersey.

27

*See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007)

("Identifying some purposeful contact with the forum is but the first step in the

specific-jurisdiction analysis. The plaintiffs' claims must also 'arise out of or relate

to' at least one of those contacts"). Plaintiffs unilateral communications with Melissa

is not sufficient for the exercise of jurisdiction of New Jersey. *See, e.g.*, *Newman*,

No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, at *24 ("[Defendant's] phone call

and letter . . . were merely responses to Plaintiff's actions. It is well-settled that

unilateral activity on the part of a plaintiff does not make a defendant amenable to

personal jurisdiction."

**RFP No. 14: All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests.**

**RFP No. 15: All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.**

RFPs Nos 14 and 15 are pure one-sided merits-based discovery. Plaintiffs

reliance on the effects test is without any basis. The Court should deny those requests

for the same reasons stated under RFPs Nos. 7, 9, 10 and 11.

**RFP No. 17: All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.**

Preservation of documents for the purpose of litigation has no baring on the issue of jurisdiction. Plaintiffs jumbled attempt to make an issue of out preservation procedures by relying on the effects test to reach irrelevant discovery should be disregarded. The effects is not applicable to this case as Daniel's Law, as this Court previously held does not mandate a specific intent standard of liability." *Atlas Data Privacy Corp., LLC*, 758 F. Supp. 3d at 341. Therefore, Daniel's Law is not an intentional tort, and Plaintiffs' reliance on the effects test is of no meaning.

**RFP No. 19: All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to businesses and individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products.**

Perhaps it is not surprising that Plaintiffs made no assertion prior to this Motion (whether in the Letter or the group meet and confer) that Melissa was deficient in its response to this RFP. Contrary to Plaintiffs' assertion in the Motion, Melissa produced documents sufficiently responsive to this request by pointing Plaintiff to Melissa's responses to Interrogatory No. 1 (describing in detail the relevant products), Interrogatory No. 2 (providing the numbers of users with new Jersey address for each product described in Interrogatory No. 1 between December 1, 2023 and April 30, 2025), Interrogatory 3 (identifying the sole New Jersey entity Melissa contracts with in connection with the products identified in Interrogatory No. 1), Response to RFP No. 2 (producing documents showing, after reasonable

29

inquiry, Defendant's total revenue from the services listed Defendant's Response to Interrogatory No. 1, as well as Defendant's revenue derived from New Jersey data in connection with the services listed in Defendant's Response to Interrogatory No. 1 between January 1, 2024 and December 31, 2024), and Response to RFP No. 2 (producing documents showing the population of each Melissa Data Base by total population and New Jersey population as of April 30, 2025). Therefore, Plaintiffs assertion that Melissa refused to provide responsive documents to this inquiry is baseless Plaintiffs make no attempt in the Motion to describe what additional specific responsive documents it seeks from Melissa. Thus, Plaintiffs' request that the Court compel additional responses to this RFP should be denied. Moreover, Plaintiffs failure to assert the deficiency prior to this Motion is sufficient to deny their request to compel additional responses. *See Cmty. Ass'n Underwriters of Am*, No. 10-cv-1559, 2014 U.S. Dist. LEXIS 51525, at *12.

**RFP No. 20: All documents reflecting or relating to the businesses and individuals in the state of New Jersey that have received products or services from Defendant, and the total amount and percentage of revenue Defendant has earned from those businesses and individuals.**

Similar to RFP No. 19, Plaintiffs made no assertion prior to this Motion (whether in the Letter or the group meet and confer) that Melissa was deficient in its response to RFP No 20. That is arguably for the same reason because Melissa provided responses to this RFP by referring Plaintiffs to Interrogatories Nos. 1 and

2 and Responses to RFPs 2, 18 and 19. Moreover, Plaintiffs failure to assert the deficiency prior to this Motion is sufficient to deny their request to compel additional responses. *Id.* at *12.

**RFP No. 21: All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFRCA.**

Plaintiffs argues that this request is relevant to the issue of jurisdiction because it could possibly "show Defendants' knowledge that they sell, transfer, or otherwise transact data with or within the state of New Jersey, and are subject to New Jersey regulations governing data privacy." (Motion at 36). However, that is irrelevant to the issue of jurisdiction as it does not relate to Melissa's contact with New Jersey, which the only issue Plaintiffs are permitted to seek discovery on.

## <u>CONCLUSION</u>

For these reasons and those set forth above, Melissa respectfully submits that Plaintiffs' motion to compel jurisdictional discovery should be denied.

Dated: July 14, 2025                    **RIKER DANZIG LLP**

By:    <u>/s/ Michael P. O'Mullan</u>
       Michael P. O'Mullan
       7 Giralda Farms, Suite 250
       Madison, NJ 07940-1051
       Tel: (973) 538-0800
       Fax: (973) 538-1981
       Email: MOMullan@RIKER.com
       *Attorneys for Defendant Melissa Data Corporation*

31