## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV | Civil Action No. 1:24-cv-04292-HB |
| Plaintiffs, | Hon. Harvey Bartle, III |
| v. | Electronically Filed |
| MELISSA DATA CORP, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, | |
| Defendants. | |

## BRIEF OF DEFENDANT MELISSA DATA CORPORATION IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
Email: MOMullan@RIKER.com
OMarouf@RIKER.com
*Attorneys for Defendant Melissa Data Corporation*

*On the Brief:*
Michael P. O'Mullan, Esq.
Omar Marouf, Esq

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT ...................................................................................................11

I.    PLAINTIFFS' MOTION SHOULD BE DENIED AS IT SEEKS TO COMPEL MELISSA TO PROVIDE DISCOVERY THAT THE COURT DENIED ON A PREVIOUS MOTION TO COMPEL ...........................12

II.   PLAINTIFFS' MOTION IS AN ATTEMPT TO PREJUDICE MELISSA BY SEEKING ONE SIDED MERITS-BASED DISCOVERY UNDER THE GUISE OF JURISDICTIONAL DISCOVERY...............15

III.  THE DEPOSITION QUESTIONS OVERREACH AND ARE DISPROPORTIONATE TO THE NARROW JURISDICTIONAL INQUIRY..................................................................................................17

IV.   PLAINTIFFS RELIANCE ON THE *CALDER* "EFFECTS" TEST TO COMPEL MELISSA TO PRODUCE MERITS DISCOVERY SHOULD BE REJECTED AGAIN ................................................................18

       A.   The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not an Intentional Tort .........................................19

       B.   Melissa does not Aim its Conduct at New Jersey...........................20

V.    PLAINTIFFS' ATTEMPT TO USE ITS UNILATERAL CONTACTS WITH MELISSA CANNOT BE THE BASIS FOR JURISDICTION UNDER THE TRADITIONAL PURPOSEFUL AVAILMENT TEST AND, THEREFORE, IS NOT A BASIS TO REACH MERITS DISCOVERY ..............................................................................26

CONCLUSION.................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                             **Page(s)**

*Amberson Holdings LLC v. Westside Story Newspaper*,
  110 F. Supp. 2d 332 (D.N.J. 2000) .......................................................27

*Antico v. Ram Payment, LLC*,
  No. 1:20-cv-12130, 2024 U.S. Dist. LEXIS 174303 (D.N.J. Sept. 26, 2024) ....18

*Atlas Data Privacy Corp. v. We Inform, LLC*,
  758 F. Supp. 3d 322 (D.N.J. 2024) .......................................................19

*Briskin v. Shopify, Inc.*,
  87 F.4th 404 (9th Cir. 2023) *reh'g en banc granted, opinion vacated*, 101 F.4th 706 (9th Cir. 2024), *and on reh'g en banc*, 135 F.4th 739 (9th Cir. 2025) ............24

*Click Go and Buy Inc. v. IT Assets, Inc.*,
  No. 24-cv-0744, 024 U.S. Dist. LEXIS 234578 (D.N.J. Dec. 31, 2024) ............22

*Delena v. Verizon N.Y. Inc.*,
  No. 02-cv-0372C(F) 2006 U.S. Dist. LEXIS 53576 (W.D.N.Y. Aug. 2, 2006) .13

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024) ........................................................*passim*

*Hurley v. Cancun Playa Oasis Int'l*,
  No. 99-574, 1999 U.S. Dist. LEXIS 13716 (E.D. Pa. Aug. 31, 1999) ...............26

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)..........................................................23, 24

*Ingrao v. AddShoppers, Inc.*,
  No. 24-cv-1022, 2024 U.S. Dist. LEXIS 214748, (E.D. Pa. Nov. 25, 2024).......24

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)..................................................................27

*Kim v. Korean Air Lines Co.*,
  513 F. Supp. 3d 462 (D.N.J. 2021) .......................................................26

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) ..............................................................17

ii

*Lloyd-Jones v. Connolly*,
  No. 20-cv-912, 2022 U.S. Dist. LEXIS 148894 (D.N.J. Aug. 19, 2022) ............11

*M.H. ex rel. C.H. v. Omegle.com LLC*,
  No. 20-11294, 2021 U.S. Dist. LEXIS 52427 (D.N.J. Mar. 19, 2021) ..............26

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ....................................................................19, 21, 23

*Mithril GP Emp. Feeder LLC v. McKellar*,
  No. 19-cv-2144, 2020 U.S. Dist. LEXIS 104382 (D. Del. June 15, 2020) .........17

*Oyebanji v. Palmetto Vacation Rentals LLC*,
  No. 20-cv-8983, 2021 U.S. Dist. LEXIS 159743 (D.N.J. Aug. 20, 2021)...........26

*Re v. Midland Funding, LLC*,
  No. 16-cv-3037, 2019 U.S. Dist. LEXIS 249634 (D.N.J. Mar. 7, 2019) ............13

*Rhodes v. Azeff*,
  No. 22-cv-101, 2025 U.S. Dist. LEXIS 15531 (W.D. Pa. Jan. 29, 2025) ...........23

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*,
  750 F.3d 1178 (10th Cir. 2014) ...........................................................................20

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018) ................................................................................11

*Thomas v. Papa John's Int'l, Inc.*,
  No. 24-3557, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) ..............25

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
  No. 11-cv-4574, 2012 U.S. Dist. LEXIS 29294 (E.D. Pa. Mar. 6, 2012) ..........17

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ..........................................................................22, 26

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
  75 F.3d 147 (3d Cir. 1996) ..................................................................................27

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................................20, 27

*Wolstenholme v. Bartels*,
  511 F.App'x 215 (3d Cir. 2013) ..........................................................................21

Defendant Melissa Data Corporation ("Melissa") respectfully submits this brief in opposition to Plaintiffs' motion to compel ("Motion")[1] seeking an order compelling Melissa's corporate representative to appear for a supplemental Rule 30(b)(6) deposition and requiring Melissa to pay for the costs of the court reporter and transcript for the supplemental deposition. Plaintiffs' Motion should be denied.

## **INTRODUCTION**

Plaintiffs' Motion is an overt attempt to circumvent a previous order of this Court that denied the exact same merits discovery they seek to compel Melissa to provide through a **second** deposition on the limited issue of personal jurisdiction. Plaintiffs' disregard of this Court's previous order could not be more blatant. On August 13, 2025, this Court entered an order denying, in relevant parts, Plaintiffs' first motion to compel Melissa to provide further answers to similarly objectionable interrogatories and requests for production of documents ("RFPs") that are purely related to the merits of this case and not limited to jurisdictional discovery. Despite this clear order from the Court, Plaintiffs proceeded to serve a Rule 30(b)(6) deposition notice to Melissa that included topics that are virtually identical to those same interrogatories and RFPs this Court denied only one month prior.

---

[1] The Motion is filed on the docket as ECF No. 94.

In reliance on the Court's previous order, which found that Plaintiffs were not entitled to the same merits discovery that was listed in the deposition topics, Melissa served objections to such topics almost two months prior to the deposition and separately advised Plaintiffs' counsel in a meet and confer that Melissa would not be producing a witness prepared to speak on behalf of Melissa on such topics because this Court had already held Plaintiffs are not entitled to such merits discovery under the guise of jurisdictional discovery. Rather than take action prior to the deposition, Plaintiffs chose to disregard Melissa's objections and this Court's prior ruling. In doing so, Plaintiffs attempted to exploit the limited 30(b)(6) deposition on the sole issue of jurisdiction to ask a corporate representative witness, whom they had been warned would not be prepared to speak on such topics, the same merits-based questions the Court had previously denied as irrelevant and not proportional to the limited jurisdictional issue. Despite a lengthy and costly first motion that was denied in relevant part relating to the same subjects, Plaintiffs now filed another motion to compel seeking the same discovery with the same arguments on an issue the Court has already decided after full briefing.

Needless to say, Plaintiffs' Motion offers the same flawed arguments that they made in their first motion to compel in asserting the same theory of jurisdiction, which is only applicable to intentional torts, and contrary to this Court's prior holding that Daniel's Law is a negligence tort and not an intentional tort. In their

attempt to circumvent this Court's prior rulings, Plaintiffs once again cite authority from another circuit that is completely at odds with recent Third Circuit precedent on the issue of personal jurisdiction. Plaintiffs' second attempt to use jurisdictional discovery to obtain one-sided merits based discovery should be rejected and this Motion should be denied in its entirety.

## BACKGROUND

By order dated April 2, 2025, this Court granted Plaintiffs' request to serve limited interrogatories and RFPs "**relevant to the motions** of [Melissa and other] defendants to dismiss pursuant to Rule 12(b)(2) of Federal Rules of Civil Procedure." ECF. No 57. On April 14, 2025, Plaintiffs served Melissa with 16 interrogatories ("Interrogatories")  and 23 RFPs. On May 14, 2025, Melissa served timely objections and responses to Plaintiffs' jurisdictional discovery requests. At the Court's request, Melissa's counsel simultaneously served via email a copy of the objections and responses to the Interrogatories upon this Court. By order dated June 17, 2025, this Court granted Plaintiffs' leave to file motions to compel defendants with pending 12(b)(2) motions to provide further responses to certain Interrogatories and RFPs. Of relevance to this Motion, Plaintiffs moved to compel Melissa and almost every defendant (the "First Motion") (ECF No. 76) to provide answers (over the defendants' objections) to Interrogatories 7, 8, 9, and 10, which requested:

> **Interrogatory 7:** Identify any audit, review, or evaluation
> of Defendant conducted since December 1, 2023 by any

officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.

**Interrogatory 8:** Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023.

**Interrogatory 9:** Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers.

**Interrogatory 10:** Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.

*See* Declaration of Omar Marouf ("Marouf Decl."), ¶3, Ex. 1. Plaintiffs' First

Motion also sought to compel all the defendants to respond to the following RFPs:

**RFP 5:** All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.

**RFP 6:** All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.

**RFP 7:** All documents reflecting or relating to Defendant's policies, procedures, or practices for
    a. Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.
    b. Handling information related to New Jersey residents.

**RFP 10:** Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA")

**RFP 12:** Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.

**RFP15:** All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.

*Id.*

5

Melissa filed an opposition to the First Motion (ECF No. 78) and Plaintiffs filed a reply (ECF No. 79). On August 13, 2025, this Court entered an Order denying Plaintiffs' request to compel further production of any documents, as well as to compel defendants to answer interrogatories 7, 8, 9, and 10. ECF No. 80. The Order expressly stated that **"[i]n ruling on the motion, the court has considered not only the relevance of the requested discovery to the issue of personal jurisdiction, but also proportionality to the needs of the cases**." *Id.* Thus, the Court ruled that these listed discovery topics are neither relevant nor proportional to the limited jurisdictional discovery at issue.

On September 12, 2025, the Court entered an order permitting Plaintiffs "to take depositions on the issue of personal jurisdiction" ECF No. 83. On September 26, 2025, Plaintiffs served upon Melissa a Notice of Deposition pursuant to Rule 30(b)(6) (the "Notice") Marouf Decl., ¶10, Ex. 2. The Notice listed, among others, the following deposition Topics (each individually a "Topic" and collectively "Topics"), which sought virtually identical information previously denied by the Court:

> **Topic 6:** Defendant's communications or interactions with New Jersey governmental entities, customers, or residents, including responses to Daniel's Law requests, opt-out or suppression requests, and any related correspondence with Plaintiffs.[2]

---

[2] Topic 6 seeks to explore "Defendant's communications or interactions with New Jersey governmental entities, customers, or residents, including responses to

> **Topic 7:** Defendant's policies, practices, training, or product modifications addressing New Jersey laws or regulations, including Daniel's Law, the New Jersey Identity Theft Prevention Act, and the New Jersey Fair Credit Reporting Act.[3]
>
> **Topic 8:** Defendant's involvement in complaints, lawsuits, or investigations involving New Jersey residents and their position on personal jurisdiction in such matters.[4]

*Id.*

On October 14, 2025, Melissa, in reliance on the Court's August 13, 2025 Order denying Plaintiffs' request in the First Motion to compel Melissa to provide answers to Interrogatories and RFPs that are virtually identical to the above-referenced Topics, served objections to the Notice advising Plaintiffs that said

---

Daniel's Law requests, opt-out or suppression requests, and any related correspondence with Plaintiffs." This Topic seeks to explore the same information sought in Interrogatory Nos. 9 and 10 and RFPs 5, 12, and 15, all of which sought communications related to Daniel's Law and were all denied by the Court's Order in the First Motion.

[3] Topic 7 seeks to explore "Defendant's policies, practices, training, or product modifications addressing New Jersey laws or regulations, including Daniel's Law, the New Jersey Identity Theft Prevention Act, and the New Jersey Fair Credit Reporting Act." This Topic seeks to explore the same information sought in Interrogatory 7 and RFPs 7 and 10, which sought to explore Melissa's policies, procedures and practices regarding complying with Daniel's Law, the Fair Credit Reporting Act and other laws. The Court also denied said discovery requests in its Order on the First Motion.

[4] Topic 8 sought to explore "Defendant's involvement in complaints, lawsuits, or investigations involving New Jersey residents and their position on personal jurisdiction in such matters." While Melissa also objected to Topic 8, Melissa advised Plaintiffs' that Melissa does not have any information responsive to Topic 8.

Topics were outside the scope of the permitted jurisdictional discovery, and that Melissa would not produce a witness prepared to testify on Topics 6, 7, and 8. *Id.* ¶12, Ex. 3.

Melissa did not receive any response to its objections to the Notice until November 25, 2025, when Plaintiffs' counsel sent an email to Melissa's counsel seeking a meet and confer. *Id.* ¶13, Ex. 4. Counsel for both parties held a meet and confer regarding the Notice and Melissa's objections to same on December 4, 2025 and agreed to hold the deposition on December 18, 2025. *Id.* ¶14. During the meet and confer, Plaintiffs' counsel advised Melissa's counsel that the only objections they wanted to discuss were Melissa's objections to Topics 6-8. *Id.* ¶15. Melissa's counsel reiterated Melissa's position regarding these Topics and advised Plaintiffs' counsel that the Court's August 13, 2025 order on Plaintiffs' First Motion already sought to compel Melissa to answer questions and produce documents regarding virtually identical topics, and that the Court already denied Plaintiffs' request, and accordingly, Melissa's witness would not be prepared to address these Topics at the deposition.[5] *Id.* ¶15.

---

[5] On December 12, 2025 Plaintiffs' served an amended 30(b)(6) notice (the "Amended Notice") which was identical to the original Notice other than specifying the date and the location of the deposition. *Id.* ¶17, Ex. 5 On December 15, 2025, Melissa served its objections and responses to the Amended Notice reiterating the same objections to the Original Notice. *Id.* ¶17, Ex. 6.

Despite the Court's prior order and Melissa's objections to Topics 6-8 of the Notice, Plaintiffs sought to proceed with the deposition and asked questions relating to the objectionable Topics that are identical to the Interrogatories and RFPs that the Court already refused to compel defendants to answer. During the deposition, Melissa objected to the following questions relating to Topic 6 of the Notice (the "Topic 6 Questions"):

> 1.   Has Melissa Data ever contacted a New Jersey governmental entity regarding Daniel's Law?
> 2.   Did Melissa Data receive emails from individuals who were, who were asserting their rights under Daniel's Law?
> 3.   And when Melissa Data receive these email, did it have reason to believe that these emails were coming from New Jersey resident?
> 4.   Did the emails Melissa Data received request the take down of New Jersey home addresses?
> 5.   And did those emails also reference, yeah, did some of those emails also reference or independently reference the take down of New Jersey phone numbers?
> 6.   Did Melissa Data act upon any of the requests it received to take down a home address or phone number information?
> 7.   Did Melissa respond, did Melissa Data respond to any of the emails that it received from individuals who were attempting to exercise their rights under Daniel's law?

*See* Certification of Jessica A. Merejo ("Merejo Cert.") (ECF No. 94-3), Ex. F, Tr. 144:14-147-2.[6]

---

[6] Each of the Topic 6 Questions sought the same information in Interrogatories Nos. 9 and 10 and RFPs 5, 12 and 15. Plaintiffs' First Motion moved to compel Melissa

Additionally, Melissa objected to the following questions relating to Topic 7 of the Notice (the "Topic 7 Questions"):

1. Does Melissa Data have a policy in place to address requests that it receives pursuant to Daniel's Law?
2. And did Melissa Data have a policy in place at the time that it received Daniel's Law requests to handle the requests that it was receiving?
3. Has Melissa Data trained any of its employees on the receipt of implementation pursuant to requests that it's receiving under Daniel's Law?

*Id.*[7]

Contrary to the suggestion in Plaintiffs' Moving Brief at 5 (ECF No. 94-1) Melissa's corporate representative witness was prepared to and testified for approximately three hours and thirty minutes regarding the unobjectionable topics in the Notice, including the nature, scope and operation of its products, services and database, its marketing and sales of those services to New Jersey residents, and its revenue derived from such sales. Marouf Cert., ¶19.

On January 14, 2026, the Court entered an order allowing Plaintiffs to file this Motion EFC No. 93.

---

provide answers on said discovery requests, which the Court denied in its August 13, 2025 Order.

[7] Each of the Topic 7 Questions sought the same information in Interrogatory No. 7 and RFPs 7 and 10. Plaintiffs' First Motion moved to compel Melissa to provide answers on said discovery requests, which the Court denied in its August 13, 2025 Order.

## **ARGUMENT**

On a motion to compel, the moving party "bears the initial burden of showing the relevance of the requested information. The burden then shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones v. Connolly*, No. 20-cv-912, 2022 U.S. Dist. LEXIS 148894, at *18 (D.N.J. Aug. 19, 2022). "[J]urisdictional discovery is not a license for the parties to engage in a fishing expedition and [] the District Court should take care to circumscribe the scope of discovery to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted). As the Third Circuit has explained, this is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure," which require discovery to be proportional to the needs of the case. *Id.* Plaintiffs' Motion should be denied in its entirety as the issues and arguments in the Motion were already raised,  fully briefed and decided by the Court in the August 13, 2025 Order. Indeed, in its Order resolving the First Motion, this Court expressly stated "[i]n ruling on the motion, the court has considered not only the relevance of the requested discovery to the issue of personal jurisdiction, but also proportionality to the needs of the cases." ECF No. 80. Similar to its First Motion, Plaintiff again seeks to compel Defendant to provide answers to merits discovery that have no relevance to the issue of jurisdiction, and the Court ruled is not relevant nor proportionate to the limited needs of jurisdictional discovery

at issue. Therefore, Plaintiffs fail to meet their burden and their Motion should be denied in its entirety.

## I.    PLAINTIFFS' MOTION SHOULD BE DENIED AS IT SEEKS TO COMPEL MELISSA TO PROVIDE DISCOVERY THAT THE COURT DENIED ON A PREVIOUS MOTION TO COMPEL

Despite the Court's denial of Plaintiffs' First Motion to compel defendants to provide discovery that goes to the merits of this case, Plaintiffs' now attempt to evade that Order by seeking to compel Melissa to provide answers to virtually identical questions and demands in the form of a corporate representative deposition pursuant to Rule 30(b)(6). The Court's August 13, 2025 Order denied Plaintiffs' requests for Interrogatories and RFPs seeking information that pertain to defendants' communications with Plaintiffs, New Jersey residents and governmental entities relating to Daniel's Law (Interrogatory Nos. 9 and 10, RFPs 5, 6, 12 and 15). ECF No. 80. Similarly, the Court denied the part of Plaintiffs' First Motion seeking to compel defendants to provide answers and documents pertaining to policies, procedures and practices relating to Daniel's Law (Interrogatory 7 and RFPs 7 and 10). *Id.* In disregard of this Court's order on the First Motion, Plaintiffs now attempt, for the second time, to seek the same exact information the Court had already denied as irrelevant and disproportional to the issue of jurisdiction, *see id.*, by repackaging them as topics and questions for a deposition that are likewise beyond jurisdictional issues and reach the merits of the case. Plaintiffs made virtually identical arguments

in this Motion to compel defendants to answer the same questions to arguments raised in the First Motion, which mainly relies on the *Calder* effects test. However, that issue was fully briefed during the First Motion and the Court ruled that the Interrogatories and RFPs were not relevant nor proportional to the needs of the case at this juncture, denying Plaintiffs' motion regarding the same merits discovery they now seek in this Motion. The reassertion of these same requests in the form of Topics for a deposition of a corporate representative, however, does not render the requests any more discoverable. *See, e.g., Re v. Midland Funding, LLC,* 2019 U.S. Dist. LEXIS 249634, at *11 (D.N.J. Mar. 7, 2019) ("Plaintiff has now raised it again, making the same arguments that this Court rejected in August. The Court once again denies Plaintiffs requests with regard to the underlying agreements..."); *Delena v. Verizon N.Y. Inc.,* 2006 U.S. Dist. LEXIS 53576, at *5-6 (W.D.N.Y. Aug. 2, 2006) (finding plaintiff effort to seek the disclosure of tax documents which was previously denied by this court in its ruling on plaintiff's motion to compel was "an effort to circumvent the court's previous discovery order," and "is not proper."). This Court has already ruled that Plaintiffs are not entitled to this discovery and Plaintiffs' attempted bypass of this Court's order is entirely improper. Plaintiffs' attempted circumvention of the Court's earlier Order is all the more egregious because they were informed almost two months prior to the deposition that Melissa's witness

13

would not be prepared to address those topics, Marouf Decl.  ¶12, Ex. 3, but Plaintiffs took no action.

Plaintiffs' now attempt to justify their disregard to the Court's Order by claiming (without any legitimate basis) that:

> it appears that the Court was directing that such an inquiry take place during depositions, as a more efficient and less burdensome way of obtaining the evidence as compared to document productions and interrogatories. That is particularly the case where the Court knew depositions were going to take place after its ruling on the motion to compel responses to certain interrogatories, and where the ruling on the motion to compel did not stake out any categorical grounds that were outside the scope of personal jurisdiction discovery.

Moving Brief at 16. Unsurprisingly, Plaintiffs do not cite to any order, text or statement by the Court to indicate that its denial of Plaintiffs' merits discovery requests in the First Motion was because the Court decided that such questions were more fitting to a corporate representative deposition that is limited to jurisdictional issues. Plaintiffs' statement is strikingly absent any basis in light of the fact that when the Court entered its Order denying the First Motion, Plaintiffs were not permitted to take the deposition of any defendant.

This Court has already been fully briefed on the issues raised in this Motion and has issued its Order that denied Plaintiffs discovery on the same information Plaintiffs now seek in a second deposition. Plaintiffs' motion serves as nothing more than a second attempt to litigate issues that the Court has already decided and

14

foreclosed at this stage of the jurisdictional discovery. The Court should not allow such bad faith tactics to prevail and this Motion should be denied in its entirety.

## II. PLAINTIFFS' MOTION IS AN ATTEMPT TO PREJUDICE MELISSA BY SEEKING ONE SIDED MERITS-BASED DISCOVERY UNDER THE GUISE OF JURISDICTIONAL DISCOVERY

Notwithstanding Melissa's objections to Plaintiffs' Notice and reiteration of said objections during the meet and confer explaining that the Court had already ruled on such requests for merits in the August 13, 2025 Order, Plaintiffs charged ahead with asking questions that go purely to the merits of the case. *See Marouf Decl.* ¶20-21. Plaintiffs' attempt to obtain merits-based discovery is premature and highly prejudicial to Melissa at this juncture as Melissa contends it is not subject to the jurisdiction of this Court and Plaintiffs cannot seek merits discovery. Plaintiffs have already served Melissa with 16 Interrogatories and 23 RFPs. After Melissa objected to merits discovery in those requests, Plaintiffs filed the First Motion to compel. The First Motion was expensive for the parties and time consuming for the Court. It resulted in the August 13, 2025 Order, which denied four of the six Interrogatories Plaintiffs' sought to compel Melissa to answer,[8] as well as all of Plaintiffs' 15 RFPs. Thus, following Plaintiffs' expensive and burdensome First

---

[8] Of the two Interrogatories (Nos. 3 and 6) Melissa was compelled to Answer on the First Motion, Melissa had already provided the answer to Interrogatory 6 as part of Interrogatory 5 and referred Plaintiffs in its answer in Interrogatory 6 to Interrogatory 5. Marouf Decl., ¶9.

Motion, Melissa was, in effect, compelled by the Court to provide an answer only to Interrogatory No. 3, which itself was rewritten by the Court to narrow its very broad scope as it was originally drafted by Plaintiffs. Marouf Decl., ¶9; ECF No. 80. Plaintiffs knew based on Melissa's objections to the Notice and the meet and confer that Melissa was not presenting a witness to testify on Topics 6-8 of the Notice. However, Plaintiffs chose to proceed with the deposition, ask the objectionable questions and then seek to compel Melissa to sit for another deposition to answer the merits-based question that the Court had already denied. Had Plaintiff wanted to avoid the unnecessary expense for Melissa and avoid the unnecessary burden to Court, Plaintiffs' could have refrained from including Topics in the Notice that were already denied by this Court in the form of Interrogatories and RFPs. Moreover, Plaintiffs had the opportunity to resolve the issues raised in this Motion prior to the deposition to prevent the need for a second deposition. Despite being aware of Melissa's objections to Topics 6-8 and that no witness would be prepared to testify to those topics since October 14, 2025, Plaintiffs waited until after the deposition to file this Motion. The Court should not condone Plaintiffs' tactics, and Defendants' respectfully request that the Motion be denied in its entirety.

## III.  THE DEPOSITION QUESTIONS OVERREACH AND ARE DISPROPORTIONATE TO THE NARROW JURISDICTIONAL INQUIRY

Notwithstanding the Court's prior ruling denying the same discovery Plaintiffs seek in this Motion, Plaintiffs' misplaced overreach to obtain one-sided merits discovery through their deposition Topics and questions serves as an independent compelling reason to deny the Motion. As courts in this Circuit routinely hold, "jurisdictional discovery should be narrowly tailored, and 'a few responses to interrogatories will often suffice.'" *See, e.g.*, *Mithril GP Emp. Feeder LLC v. McKellar*, No. 19-cv-2144, 2020 U.S. Dist. LEXIS 104382, at *4 (D. Del. June 15, 2020) (quoting *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 109 (3d Cir. 2015)). Plaintiffs nevertheless served on Melissa a total of 16 Interrogatories, as well as 23 RFPs seeking information and documents that do not remotely relate to the limited issue of Melissa's contacts with New Jersey as is confirmed by the Court's Order denying, in relevant part, the First Motion. Plaintiffs' are now attempting to obtain the same information by including Topics that address the merits in depositions limited to the issue of jurisdiction. These overbroad Topics and questions exceed the limited scope of ordinary jurisdictional discovery. *See TruePosition, Inc. v. LM Ericsson Tel. Co.*, No. 11-cv-4574, 2012 U.S. Dist. LEXIS 29294, at *14-15 (E.D. Pa. Mar. 6, 2012) (stating that jurisdictional discovery "is not nearly as intrusive as merits discovery" and requiring

requests to be "specific and adequately tailored to the jurisdictional issue at hand"). The attempt by Plaintiffs to obtain additional information from Melissa – much of which goes to the merits of the case and thus is impermissible at this threshold stage – should be rejected. *See Antico v. Ram Payment, LLC*, No. 1:20-cv-12130, 2024 U.S. Dist. LEXIS 174303, at *6 (D.N.J. Sept. 26, 2024) ("Jurisdictional discovery should not . . . serve as a fishing expedition into the underlying merits, all while under the guise of jurisdictional discovery.").

The information that Plaintiffs seek to compel from Melissa is grossly disproportionate to the discrete question of personal jurisdiction. This scorched earth discovery approach to limited jurisdictional discovery is asserted under the guise of a jurisdictional theory that is absent from Plaintiffs' Complaint and is inapplicable to this case.

Thus, consistent with the Third Circuit's directive, and this Court's prior rulings in this case, this Motion should be denied.

## IV. PLAINTIFFS RELIANCE ON THE *CALDER* "EFFECTS" TEST TO COMPEL MELISSA TO PRODUCE MERITS DISCOVERY SHOULD BE REJECTED AGAIN

Plaintiffs again resort to invoking the *Calder* "effects" test to make a twisted argument to compel a second deposition on questions that solely go to the merits of this case. Despite being raised as the main argument as to why the merits-based discovery sought in Interrogatories 7-10 and the RFPs in the First Motion, which the

Court rejected, Plaintiffs now recycle the same argument to seek the same discovery the Court has already denied.

To invoke the *Calder* effects test, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024). Crucially, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state." *Id.* at 191. For that reason, courts need not consider the first two prongs of the test unless the third prong is satisfied. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

### A.    The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not an Intentional Tort

In their First Motion, Plaintiffs' acknowledged that the *Calder* test only applied to intentional torts. *See* First Motion Moving Brief at 4. (ECF No. 76). This Court has already found that Daniel's Law lacks a specific standard of liability in its decision dated November 26, 2024, explaining "the court concludes that Daniel's Law does not mandate a specific intent standard of liability." *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024) ("Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available [information] after the statutory deadline had expired."). Plaintiffs'

generic reference to "willful non-compliance" in the prayer for relief seeking punitive damages to circumvent that they never alleged any facts that suggest Melissa acted intentionally serves nothing more than a desperate attempt to twist an argument to compel Melissa to provide one-sided discovery that exclusively goes to the merits of this case. Nowhere in Plaintiffs' Complaint is there reference to a single fact describing willful misconduct.

Plaintiffs' desperate attempt to turn the parroting of a legal conclusion to invent an after-the-fact allegation of willful misconduct is more evidence that the *Calder* effects test does not apply to this case. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

### B. Melissa does not Aim its Conduct at New Jersey

As in their First Motion, Plaintiffs again argue that whether Defendants were "aware of or received Daniel's Law notices from New Jersey residents" and "what Defendants did about the notices are particularly important for personal jurisdiction

under the effects test…to show Defendants' knowledge and express aiming at the target forum, New Jersey." Moving Brief at 14-15. However, this argument is unavailing and was previously rejected in the First Motion as "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." *Wolstenholme v. Bartels*, 511 F.App'x 215, 219 (3d Cir. 2013) (quoting *Marten*, 499 F.3d at 297). Therefore, courts examine the "expressly aimed" prong of the "effects" test before considering the other two elements.

The Third Circuit's recent decision in *Hasson*, 114 F.4th 181 , clarifies that the *Calder* effects test and the traditional "purposeful availment" test for specific jurisdiction are analytically distinct. Importantly, *Hasson* held that defendant's mere "knowledge" that a plaintiff in the forum will be harmed does not show that its actions "expressly targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. *Hasson*, 114 F.4th at 196 ("We have rejected the argument that the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") (internal quotations omitted).

Applying these principles, the *Hasson* Court found that the plaintiff had failed to establish jurisdiction under either test. Although the underlying claim there was wiretapping – a statutory tort with an intentional conduct requirement – the plaintiff's failure to plead express forum targeting defeated jurisdiction under *Calder*, and his inability to show that the claims "arose out of or related to" Papa John's in-forum contacts foreclosed jurisdiction under the traditional test as well. *Id.* at 190-92.

In the wake of the Third Circuit's decision in *Hasson*, several district courts have applied its clarified framework for specific personal jurisdiction. The following three cases—*Click Go*, *Rhodes*, and *Ingrao*—are the most recent and instructive examples.

In *Click Go and Buy Inc. v. IT Assets, Inc.*, No. 24-cv-0744, 024 U.S. Dist. LEXIS 234578, at *20 (D.N.J. Dec. 31, 2024), the court applied the *Calder* "effects" test in light of *Hasson* to a fraud claim, i.e., an intentional tort. The court emphasized that "*Calder* requires more," and that a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is." *Id.* at 8 (quoting *Hasson*, 114 F.4th at 192). The court noted that plaintiff's theory—that defendant "expressly aimed its tortious conduct" by directing fraudulent communications into New Jersey—failed because plaintiff's location was not known to defendant until after the initial contact. As the court explained,

"ultimately learn[ing]" of the plaintiff's location after the fact "does not, in this case, satisfy the 'effects' test's intentionality requirement." *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 n.5 (3d Cir. 2003)). As in *Hasson*, the court stressed that "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *Id.* at 8 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). Rather, a plaintiff must "point to other actions that adequately demonstrate[] that the defendants targeted (or 'expressly aimed' their conduct at) the forum, and thereby show that the forum was the focal point of the tortious activity." *Id.* (internal citation omitted). The court concluded that the brunt of plaintiff's harm may well have occurred in New Jersey, but that was not enough. "Because Plaintiff fails to show that Defendant 'manifest[ed] behavior intentionally targeted at and focused on the forum,'" jurisdiction was lacking. *Id.* at 8 (quoting *Marten*, at 298 (3d Cir. 2007)).

In *Rhodes v. Azeff*, No. 22-cv-101, 2025 U.S. Dist. LEXIS 15531, at *15 (W.D. Pa. Jan. 29, 2025), the court dismissed defamation claims for lack of personal jurisdiction, applying *Hasson.* Although the complaint plausibly alleged defamation and harm in Pennsylvania, it did not satisfy the express aiming prong. As the court explained, "'the mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson*.'" *Id.* (citing *Marten*, 499 F.3d at 299). The court

reiterated that a plaintiff must point to "additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct." *Id.* at *12-13.

In *Ingrao v. AddShoppers, Inc.*, the court elaborated that, "[t]o satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" No. 24-cv-1022, 2024 U.S. Dist. LEXIS 214748, at *26 (E.D. Pa. Nov. 25, 2024) (quoting *IMO Indus., Inc.*, 155 F.3d 254 at 266) (emphasis added). While the complaint alleged wiretapping and tracking—both intentional torts—and asserted harm in Pennsylvania, the court found that plaintiffs failed to satisfy either component of the "express aiming" prong. Plaintiffs failed to identify any "specific activity indicating that [AddShoppers] expressly aimed its tortious conduct at the forum." *Id* at *29. The court rejected plaintiffs' assertion that deploying tracking code across retail websites, some of which were accessible to Pennsylvania users, constituted intentional targeting. Quoting *Hasson*, the court noted that a software company does not expressly target Pennsylvania "simply by providing code for" a website accessible in the forum. *Id.* at *30 (quoting *Hasson*, 114 F.4th at 195-96).

There is no allegation in the Complaint and Plaintiffs have not pointed to any contacts with New Jersey indicating that Melissa expressly aimed tortious conduct at New Jersey and thereby made New Jersey the focal point of its activity related to this case. For this reason as well, the effects test does not apply.

As in the First Motion, Plaintiffs attempt to circumvent the Third Circuit's decision in *Hasson* by citing to the Ninth Circuit decision in *Briskin v. Shopify, Inc.,* 87 F.4th 404, 409 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 101 F.4th 706 (9th Cir. 2024), *and on reh'g en banc*, 135 F.4th 739 (9th Cir. 2025). Plaintiffs cited to *Briskin* in their attempt to justify compelling merits-based discovery from Melissa under the guise of seeking discovery on the express aiming prong of the effects test. However, Plaintiffs fail to mention that *Briskin* is completely inapposite to the Third Circuit's controlling decision in *Hasson*.

In fact, in a recent decision, the Ninth Circuit, relying on its decision in *Briskin*, reached the complete opposite conclusion as *Hasson* on the issues of express aiming and more generally the existence of jurisdiction in a case that involved similar claims to those asserted in *Hasson* against the same defendant (Papa John's) involving the use of the same tool on Papa John's website that gave rise to the claim (Session Reply Code). *See Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039, at *2-3 (9th Cir. June 18, 2025) ("we reject Papa John's argument that it did not expressly aim its conduct at California") (citing

*Briskin*, 135 F.4th at 754). Therefore, Plaintiffs' reliance on the Ninth Circuit's decision in *Briskin* is misplaced as it is contrary to the Third Circuit precedent in *Hasson*.

Finally, Melissa's alleged knowledge that Plaintiffs are located in New Jersey, as Plaintiffs attempt to rely on *Briskin* to suggest, is insufficient to satisfy the express aiming prong of the effects test. *See Hasson*, 114 F.4th at 196 ("[W]hile a defendant's knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, that alone is insufficient to satisfy the targeting prong of the effects test").

## V. PLAINTIFFS' ATTEMPT TO USE ITS UNILATERAL CONTACTS WITH MELISSA CANNOT BE THE BASIS FOR JURISDICTION UNDER THE TRADITIONAL PURPOSEFUL AVAILMENT TEST AND, THEREFORE, IS NOT A BASIS TO REACH MERITS DISCOVERY

"'[T]he mere operation of a commercially interactive web site' does not confer jurisdiction wherever that website may be accessed." *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 470 (D.N.J. 2021) (quoting *Toys "R" Us*, 318 F.3d at 454); *see also M.H. ex rel. C.H. v. Omegle.com LLC*, No. 20-11294, 2021 U.S. Dist. LEXIS 52427, at *6 (D.N.J. Mar. 19, 2021) ("[A] generally accessible website that looks and operates the same for users across the world . . . is not enough to create personal jurisdiction in New Jersey"); *Hurley v. Cancun Playa Oasis Int'l*, No. 99-574, 1999 U.S. Dist. LEXIS 13716, at *9 (E.D. Pa. Aug. 31, 1999) (Bartle, J.)

(concluding Pennsylvania lacked jurisdiction because there was no evidence "[defendant's] Web page was directed at Pennsylvania more than any other state"); *Oyebanji v. Palmetto Vacation Rentals LLC*, Civil Action No. 20-cv-8983, 2021 U.S. Dist. LEXIS 159743, at *7 (D.N.J. Aug. 20, 2021) (holding same). Specific jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden,* 571 U.S. at 284.

Plaintiffs' questions regarding alleged emails that were unilaterally sent by Plaintiffs to Melissa in California lack any basis to impose a New Jersey Court's jurisdiction on Melissa under the traditional test because there can be no specific jurisdiction where the connection between the defendant, the forum, and the litigation is based on "the plaintiff's unilateral activities." *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 334 (D.N.J. 2000); *Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Instead, "the cause of action [must] arise[] **from the defendant's forum related activities**." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (emphasis added); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 874 (2011) ("The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

27

## **CONCLUSION**

For these reasons and those set forth above, Melissa respectfully submits that

Plaintiffs' motion to compel jurisdictional discovery should be denied.

Dated: January 26, 2026

**RIKER DANZIG LLP**

By:     /s/ Michael P. O'Mullan
          Michael P. O'Mullan
          Omar Marouf
          7 Giralda Farms, Suite 250
          Madison, NJ 07940-1051
          Tel: (973) 538-0800
          Fax: (973) 538-1981
          Email: MOMullan@RIKER.com
                   Omarouf@RIKER.com
          *Attorneys for Defendant Melissa Data Corporation*

4922-8773-8762, v. 4

28