# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>MELISSA DATA CORP, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>　　　　　　　Defendants. | Civil Action No. 1:24-cv-04292-HB<br><br>Hon. Harvey Bartle, III<br><br>Electronically Filed<br><br>Oral Argument Requested |

---

**REPLY BRIEF OF DEFENDANT MELISSA DATA CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

---

**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
Email: MOMullan@RIKER.com
　　　　OMarouf@RIKER.com
*Attorneys for Defendant Melissa Data Corporation*

*On the Brief:*
　　Michael P. O'Mullan, Esq.
　　Omar Marouf, Esq

# **TABLE OF CONTENTS**

**ARGUMENT** ..................................................................................................................1

I.   **PLAINTIFFS' ATTEMPT TO USE ITS UNILATERAL CONTACTS WITH MELISSA CANNOT BE THE BASIS FOR JURISDICTION UNDER THE TRADITIONAL PURPOSEFUL AVAILMENT TEST**...1

    A.   **Melissa has not purposefully availed itself of New Jersey**...............2

    B.   **Plaintiffs' claims do not arise out of or relate to any threadbare connection Melissa may have with New Jersey.** ...............................5

    C.   **Exercising jurisdiction over Melissa would not comport with principles of fair play and substantial justice**...................................8

II.  **THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MELISSA UNDER THE *CALDER* EFFECTS TEST.** ...............10

    A.   **The *Calder* Effects Test does not apply in this case because daniel's law is not an intentional tort** ................................................10

    B.   **Melissa does not aim its conduct at New Jersey.** ............................12

    C.   **Plaintiffs failed to show they bore the brunt of the alleged harm in New Jersey**........................................................................................14

**CONCLUSION**.............................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   Page(s)

Amberson Holdings LLC v. Westside Story Newspaper,
   110 F. Supp. 2d 332 (D.N.J. 2000) ...............................................................................8

Ameripay, LLC v. Ameri pay Payroll, Ltd.,
   334 F. Supp. 2d 629 (D.N.J. 2004) ...............................................................................9

Atlas Data Privacy Corp. v. We Inform, LLC,
   758 F. Supp. 3d 322 (D.N.J. 2024) ...............................................................6,11, 12

Briskin v. Shopify, Inc.,
   87 F.4th 404, 409 (9th Cir. 2023) ...............................................................................13, 14

Burger King Corp. v. Rudzewicz,
   471 U.S. 462 (1985) ...............................................................................................6, 9

D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.,
   566 F.3d 94 (3d Cir. 2009) ...........................................................................................5

Hasson v. FullStory, Inc.,
   114 F.4th 181 (3d Cir. 2024) ...............................................................6, 10, 13, 14

Hepp v. Facebook,
   14 F.4th 204 (3d Cir. 2021) ........................................................................................2

Hurley v. Cancun Playa Oasis Int'l Hotels,
   No. 99-cv-574, 1999 U.S. Dist. LEXIS 13716 (E.D. Pa. Aug. 31, 1999)...............3

IMO Indus., Inc. v. Kiekert AG,
   155 F.3d 254 (3d Cir. 1998) ......................................................................................14

J. McIntyre Mach., Ltd. v. Nicastro,
   564 U.S. 873 (2011) ....................................................................................................5

Kawaauhau v. Geiger,
   523 U.S. 57–2 (1998) ..........................................................................................11, 12

Kim v. Korean Air Lines Co.,
   513 F. Supp. 3d 462 (D.N.J. 2021)..............................................................................3

Loucas v. Cunningham (In re Cunningham),
   541 B.R. 792 (E.D. Pa. 2015) ....................................................................................11

Marten v. Godwin,
    499 F.3d 290 (3d Cir. 2007) ...............................................................2, 10, 14, 15

Martinez v. Union Officine Meccaniche S.P.A.,
    No. 22-cv-1364, 2023 U.S. App. LEXIS 11437 (3d Cir. May 10, 2023) ..............7

Oyebanji v. Palmetto Vacation Rentals LLC,
    No. 20-cv-8983, 2021 U.S. Dist. LEXIS 159743 (D.N.J. Aug. 20, 2021).............3

Rickman v. BMW of N. Am. LLC,
    538 F. Supp. 3d 429 (D.N.J. 2021) .......................................................................5

Toys "R" Us, Inc. v. Step Two, S.A.,
    318 F.3d 446 (3d Cir. 2003) ..............................................................................1, 2

Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,
    75 F.3d 147, 151 (3d Cir. 1996)............................................................................8

Walden v. Fiore,
    571 U.S. 277, 284 (2014). .........................................................................1, 2, 6, 8

**Rules**

Rule 12(b)(2) ....................................................................................................................1

Defendant Melissa Data Corporation ("Melissa") respectfully submits this Reply to Plaintiffs' Brief in Opposition ("Opp.") (ECF 99) to Melissa's Motion to Dismiss Plaintiffs' Complaint (ECF 50) for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2).

## ARGUMENT

### I. PLAINTIFFS' ATTEMPT TO USE ITS UNILATERAL CONTACTS WITH MELISSA CANNOT BE THE BASIS FOR JURISDICTION UNDER THE TRADITIONAL PURPOSEFUL AVAILMENT TEST

Courts consider a three-prong test to determine whether to exercise specific jurisdiction under the Purposeful Availment Test. First, "the plaintiff must show that the defendant has 'minimum contacts' with the forum such that it 'purposefully avail[ed] itself of the privilege of conducting activities within the forum' and 'invok[ed] the benefits and protections of [the forum's] laws.'" Hasson v. FullStory, Inc., 114 F.4th 181, 186 (3d Cir. 2024) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451 (3d Cir. 2003)). "Second, the plaintiff's claims must arise out of or relate to at least some of those contacts, evidencing a strong relationship among the defendant, the forum, and the litigation." Id. (citations omitted). Specific jurisdiction "must arise out of contacts that the defendant himself creates with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014) (internal quotation marks and citation omitted). If those two requirements are met, the Court must then determine whether "the exercise of jurisdiction over the defendant . . . 'comport[s]

1

with traditional notions of fair play and substantial justice' such that 'the defendant should reasonably anticipate being haled into court in that forum.'" Hasson, 114 F.4th 181 at 186 (quoting Toys "R" Us, 318 F.3d at 451). See also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (explaining that all three prongs must be met to exercise specific jurisdiction). Plaintiffs fail every single prong of the Purposeful Availment Test.

      A.    **Melissa has not purposefully availed itself of New Jersey.**[1]

To establish sufficient "minimum contacts" with a forum for the purposes of specific jurisdiction, there must be evidence that "the defendant took a deliberate act reaching out to do business in that state." Hepp v. Facebook, 14 F.4th 204, 207 (3d Cir. 2021). The inquiry focuses on "contacts that the 'defendant himself' creates with the forum state," Walden, 571 U.S. at 284. Plaintiffs grossly misstate Melissa's deposition testimony, by providing numbers and figures without context, in an effort to fit Melissa into this test. First, Plaintiffs' assert that Melissa operates a website that "make[s] available New Jersey residents' home addresses and telephone numbers." However, "[t]he mere operation of a commercially interactive web site'

---

[1] Plaintiff argues (by lumping Melissa with other defendants addressed in its brief) that Melissa "affirmatively reached into New Jersey to collect New Jersey–specific data and then exploited that data for commercial gain through their websites and products." Opp. at 6. However, Melissa does not obtain its data from New Jersey or any New Jersey entity. See Melissa's Amended Response to Interrogatory No. 6, which is annexed as Exhibit 1 to the Declaration of Omar Marouf, Esq. dated March 2, 2026 ("Marouf Dec.").

2

does not confer jurisdiction wherever that website may be accessed." Kim v. Korean Air Lines Co., 513 F. Supp. 3d 462, 470 (D.N.J. 2021) (internal quotation marks and citation omitted); see also Hurley v. Cancun Playa Oasis Int'l Hotels, No. 99-cv-574, 1999 U.S. Dist. LEXIS 13716, at *9 (E.D. Pa. Aug. 31, 1999) (Bartle, J.) (finding no purposeful availment in absence of "evidence that [defendant] ha[d] done anything to encourage residents of Pennsylvania to visit its Internet site or that the Web page was directed at Pennsylvania more than any other state"). Oyebanji v. Palmetto Vacation Rentals LLC, No. 20-cv-8983, 2021 U.S. Dist. LEXIS 159743, at *7 (D.N.J. Aug. 20, 2021) (holding same).

Plaintiffs assert "Melissa acquires New Jersey consumer data—including data on approximately 5.2 million New Jersey households—from multiple data providers," Opp. at 21, however, Plaintiffs conveniently omit that the 5.2 million New Jersey households in Melissa's database represents merely 2.62% of the entire number of households in Melissa's database. See Exhibit 10 to the deposition transcript of John Melissa Jr. ("Melissa Dep."), which is annexed as Exhibit 4 to the Marouf Declaration.

Plaintiffs again attempt to distort Melissa's contacts with New Jersey by stating that Melissa "targeted and served New Jersey customers at scale" by "mailing 35 physical catalogs and sending 3,865 electronic catalogs to persons associated with New Jersey addresses, and contracting with New Jersey-based marketing partners

3

… to distribute its materials." Opp. at 21-22. However, Plaintiffs conveniently omit the 35 catalogs that were mailed physically represent nothing but a tiny fraction (3%) of the 1,139 catalogs that were mailed physically across the United States and its Territories. See Melissa's response to Interrogatory No. 4, which is annexed as Exhibit 2 to the Marouf Declaration. Plaintiffs also conveniently omit that the total number of electronic catalogs that were sent by Melissa was 317,020, id., which makes the number of electronic catalogs sent to persons with addresses associated New Jersey addresses a mere 1.21% of the total number of electronic catalogs sent by Melissa. Plaintiffs' attempts to point to the fact that contracting with a global magazine based in New Jersey for marketing purposes somehow purposefully avails Melissa to New Jersey despite the fact that none of Melissa's marketing through said entity (which is a primarily online magazine) does "not specify the geographic location" where the marketing takes place. See Melissa Dep. (132:14--134:2) (Exhibit 3 to Marouf Dec.). Such marketing conduct which is not directed at New Jersey cannot satisfy purposeful availment. Plaintiffs try to rely on the very limited numbers of customers that purchased Melissa services in New Jersey, see Opp. at 22, to indicate that Melissa somehow has substantial operations and contacts in New Jersey. Plaintiffs' reference to revenue Melissa collected from sales to customers with New Jersey billing addresses, id., which omits that such number represents

4

under 5% of Melissa's total revenue.² See Exhibit 12 to the Melissa Dep., which is annexed as Exhibit 5 to the Marouf Declaration.

Plaintiffs' distortion of the numbers by providing them absent any context indicates that Melissa barely has any contacts with New Jersey. Melissa has no employees, offices or servers located in New Jersey and does not target specifically New Jersey as compared to any other state. See Certification of John Melissa Jr. dated March 17, 2026 (Melissa Cert.) (ECF 50-1) at ¶¶11-17, 22-23. "[G]eneral efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular." Rickman v. BMW of N. Am. LLC, 538 F. Supp. 3d 429, 439 (D.N.J. 2021) (citing D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 103-04 (3d Cir. 2009); see also J. McIntyre Mach., Ltd. v. Nicastro, , 886 (2011) (finding insufficient facts that "may reveal an intent [by the defendant] to serve the U.S. market" generally, but not showing that it "purposefully avail[ed] itself of the New Jersey market" specifically).

### B. Plaintiffs' claims do not arise out of or relate to any threadbare connection Melissa may have with New Jersey.

Plaintiffs' sole argument as to why their Daniel's Law claims against Melissa arise out of or relate to Melissa's connections with New Jersey boils down to the

---

² The revenue figure Plaintiffs' cites in their brief also omits that said number also includes revenue collected from services Melissa provides that does not include any data related to addresses and phone numbers in New Jersey. See Dep. 155-1--157:17 (Marouf Dec., Ex. 3).

5

conclusory statement that "Plaintiffs' Daniel's Law claims arise out of and relate to these forum contacts because they challenge Melissa Data's collection, sale, marketing, and sale of New Jersey residents' home addresses and phone numbers after receipt of a nondisclosure request under Daniel's Law." Opp. at 23. This statement has no legal basis. The Third Circuit has made clear, a "website's accessibility" in the forum is not enough to "establish[] the strong connection between the forum and the litigation that Due Process requires," even where the website itself is alleged to have caused the putative harm. Hasson, 114 F.4th at 194. First, this Court has already held that posting addresses and phone numbers on the Internet is not illegal and is not barred by Daniel's Law. Indeed, it is protected First Amendment speech. See generally Atlas Data Privacy Corp. v. We Inform, LLC, 758 F. Supp. 3d 322 (D.N.J. 2024). The Supreme Court recognizes that "[s]pecific" or "case-linked" jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Walden, 571 U.S. at 284 n.6 (citation and internal quotation marks omitted). For specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 284 (emphasis added). To do so, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Notably, "the defendant-

focused 'minimum contacts' inquiry" is not satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." Id. at 285. A court's "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. (emphasis added). "[T]he plaintiff cannot be the only link between the defendant and the forum." Id. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id.

Plaintiffs' claims do not arise out of any of Melissa's contacts with New Jersey. The "core characteristic[]"of a Daniel's Law claim, in other words, is a failure to timely take down certain information after receiving a valid request. Martinez v. Union Officine Meccaniche S.P.A., No. 22-cv-1364, 2023 U.S. App. LEXIS 11437, at *6 (3d Cir. May 10, 2023) (explaining that only conduct related to the "core characteristics of the . . . claim" matters for specific jurisdiction). The mere fact, then, that a defendant legally disclosed a covered person's information online prior to any takedown notice is irrelevant to the jurisdictional inquiry. See id. (finding no specific jurisdiction over products liability defendants accused of design and manufacturing defects who only entered New Jersey post sale "to nurture a

7

customer relationship" because that act did not "involve [the] core characteristics of the . . . claim"). Any alleged conduct giving rise to Plaintiffs' Daniel's Law Claim (i.e. the alleged negligent conduct after Plaintiffs sent the takedown notices) occurred outside of New Jersey. As in Bristol-Meyers Squibb, this Court should reject specific jurisdiction where "all the conduct giving rise to the [plaintiffs'] claims occurred elsewhere." 582 U.S. at 265. Nor can there be specific jurisdiction where the connection between the defendant, the forum, and the litigation is based on "the plaintiff's unilateral activities." Amberson Holdings LLC v. Westside Story Newspaper, 110 F. Supp. 2d 332, 334 (D.N.J. 2000); Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Instead, "the cause of action [must] arise[] from the defendant's forum related activities." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 (3d Cir. 1996). The only link between Plaintiffs' claim and this state is that the takedown notices were purportedly sent by Atlas from New Jersey. Such link cannot satisfy the second prong of the Purposeful Availment Test.

  **C.** **Exercising jurisdiction over Melissa would not comport with principles of fair play and substantial justice**

Plaintiffs' argument in support of its claim that exercising jurisdiction over Melissa (and the other defendants) boils down to an argument that the New Jersey Legislature's enactment of Daniel's Law provides specific jurisdiction against Melissa because "New Jersey has a strong interest in protecting its residents from

8

the actions of out-of-state businesses that are felt in New Jersey," Opp. at 41, and "New Jersey has also evinced a more specific interest in the kind of injury at issue here by adopting Daniel's Law to protect its law enforcement officers, judges, and prosecutors from harm suffered by the disclosure of personal data." Id. at 41-42. However, this logic cannot hold because adopting this argument means that every statutory claim would subject any defendant anywhere to the jurisdiction of the state that allowed for such claims regardless of any facts that do not support the existence of specific personal jurisdiction. Plaintiffs do not even attempt to dispute the inherent unfairness of subjecting Melissa to the Court's jurisdiction in this case. The burden on Melissa to litigate this action in New Jersey is significant. Defendant is incorporated and has its principal place of business in California. Melissa Cert. ¶¶ 4-5. Melissa does not have any offices, employees or agents in New Jersey. Id. at ¶¶ 12-13, 17-19. Given those facts, asserting personal jurisdiction over Melissa would be unduly burdensome given its minimal ties and connection to New Jersey. The only connection Plaintiffs can point to between Melissa and New Jersey is that Melissa operates a universally available website that can be accessed in New Jersey. Therefore, Melissa could not "'reasonably anticipate being haled into [New Jersey] court'" solely on that basis, Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 635 (D.N.J. 2004) (quoting Burger King, 471 U.S. at 474-75). Thus, an assertion of jurisdiction here over Melissa, whose only connection to the state is

universally available websites, would not comport with standards of fair play and substantial justice.

## II. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MELISSA UNDER THE *CALDER* EFFECTS TEST.

Plaintiffs again resort to invoking the Calder Effects Test to argue that Melissa is subject to New Jersey jurisdiction in the case. However, the Calder Effects Test is neither applicable to this case nor satisfied to subject Melissa to personal jurisdiction.

To invoke the Calder Effects Test, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." Hasson, 114 F.4th at 187 (3d Cir. 2024). Crucially, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state." Id. at 191. For that reason, courts need not consider the first two prongs of the test unless the third prong is satisfied. Marten, 499 F.3d at 297 (3d Cir. 2007).

### A. The *Calder* Effects Test does not apply in this case because Daniel's Law is not an intentional tort

In their First Motion to Compel Jurisdictional Discovery ("First Motion"), Plaintiffs' acknowledged that the Calder test only applied to intentional torts. *See*

10

First Motion Moving Brief at 4. (ECF No. 76). This Court has already found that Daniel's Law lacks a specific standard of liability in its decision dated November 26, 2024, explaining "the court concludes that Daniel's Law does not mandate a specific intent standard of liability." We Inform, LLC, 758 F. Supp. at 341 (D.N.J. 2024) ("Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available [information] after the statutory deadline had expired."). Now Plaintiffs' argue that "Daniel's Law creates an intentional tort because it requires an intentional act of disclosure, though liability may be imposed for such a disclosure only if the defendant was negligent in reviewing and responding to received nondisclosure requests." Opp. at 9 (internal quotation marks omitted). However, claiming Daniel's Law is an intentional tort because it requires an "intentional act of disclosure" has no basis as the Supreme Court has held that ""[i]ntentional torts generally require that the actor intend the consequences of an act, not simply the act itself." Kawaauhau v. Geiger, 523 U.S. 57, 61–62 (1998) (quoting Restatement (Second) of Torts § 8A cmt. A, p. 15 (1964)) see also Loucas v. Cunningham (In re Cunningham), 541 B.R. 792, 803 (E.D. Pa. 2015) ("Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself.") (citing Kawaauhau, 523 U.S. at 61-62). As an initial matter disclosing address and phone numbers without more is not illegal and is not barred by Daniel's Law as Daneil's Law "prohibition on disclosure is triggered, as noted above, when

11

a covered person transmits to an entity written notice requesting non-disclosure." We Inform, LLC, 758 F. Supp. 3d. at 331. Plaintiffs' argument now attempts to claim that Daniel's Law is an intentional tort because it "requires an intentional act of disclosure" even though the intentional disclosure is not illegal. This result cannot hold. By Plaintiffs' logic, as the Supreme Court observed "[e]very traffic accident stemming from an initial intentional act -- for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic -- could fit the description." Kawaauhau, 523 U.S. at 62 (internal citations omitted). Therefore, Daniel's Law is not an intentional tort and Plaintiffs' cannot argue otherwise. It is worth noting that none of Melissa's conduct that Plaintiffs' brief describes as "intentional" is illegal. See Opp. at 23-24.

### B. Melissa does not aim its conduct at New Jersey.

Plaintiffs recycle the same facts it used to claim that Melissa has minimum contacts with New Jersey to argue that Melissa expressly aimed its conduct at New Jersey. Plaintiffs' Opposition does not focus on the Calder test's inquiry as to alleged harm directed at Plaintiffs in their home state (because there is none here), but instead on Melissa's general business activities with a hyperfocus on their relationship to New Jersey, devoid of necessary context. Notwithstanding the lack of allegations that Melissa directed any harm at New Jersey, mere "knowledge" that a plaintiff in the forum will be harmed does not show that its actions "expressly

12

targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. Hasson, 114 F.4th at 196 ("We have rejected the argument that the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") (internal quotations omitted). Plaintiffs' focus on Melissa's New Jersey-based customers, revenue and the number of its products that involve New Jersey addresses and phone numbers bear no relationship to the alleged tortious conduct (or lack thereof). Moreover, Plaintiffs' for the third time attempt to rely on the Briskin v. Shopify, Inc., 87 F.4th 404, 409 (9th Cir. 2023), reh'g en banc granted, opinion vacated, 101 F.4th 706 (9th Cir. 2024), and on reh'g en banc, 135 F.4th 739 (9th Cir. 2025) in an attempt to justify the application of the Calder Effects Test notwithstanding that Briskin is completely inapposite to the Third Circuit's controlling decision in Hasson. In fact, in a recent decision, the Ninth Circuit, relying on its decision in Briskin, reached the complete opposite conclusion as Hasson on the issues of express aiming and more generally the existence of jurisdiction in a case that involved similar claims to those asserted in Hasson against the same defendant (Papa John's) involving the use of the same tool on Papa John's website that gave rise to the claim (Session Reply Code). See Thomas v. Papa John's Int'l, Inc., Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039, at *2-3 (9th Cir. June 18, 2025) ("we reject Papa John's argument that it did

13

not expressly aim its conduct at California") (citing <u>Briskin</u>, 135 F.4th at 754). Therefore, Plaintiffs' reliance on the Ninth Circuit's decision in <u>Briskin</u> is misplaced as it is contrary to the Third Circuit precedent in <u>Hasson</u>.

### C. Plaintiffs failed to show they bore the brunt of the alleged harm in New Jersey.

Plaintiffs argue that Melissa's alleged knowledge that Daniel's Law exists and why it was enacted coupled with Melissa making available "New Jersey residents' home addresses and phone numbers," Opp. at 24, means that Melissa knows harm will occur in New Jersey. However, Third Circuit courts have consistently held that knowledge alone is not enough without "specific activity … expressly aimed" at the forum state. <u>See</u>, <u>e.g.</u>, <u>Marten</u>, 499 F.3d at 299 (3d Cir. 2007); <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 266 (3d Cir. 1998). In <u>Ingrao v. AddShoppers, Inc.</u>, the court elaborated that, "[t]o satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" No. 24-cv-1022, 2024 U.S. Dist. LEXIS 214748, at *26 (E.D. Pa. Nov. 25, 2024) (quoting <u>IMO Indus., Inc.</u>, 155 F.3d 254 at 266) (emphasis added). Here, Plaintiffs failed to identify a single tortious act or conduct Melissa aimed at New Jersey. Therefore, it logically follows that Plaintiffs cannot show that Melissa knew that the brunt of the harm allegedly caused by the

14

conduct would be suffered in New Jersey. See Marten, 499 F.3d at 299 ("We do not need to tackle this thorny conceptual issue [of the location of the brunt of the harm], as there is no jurisdiction over these defendants even if [Plaintiffs] suffered the brunt of the harm.").

## CONCLUSION

For these reasons and those set forth above, Melissa respectfully submits that Defendants' Motion should be granted.

Dated: March 2, 2026                **RIKER DANZIG LLP**

By:   /s/ Michael P. O'Mullan
Michael P. O'Mullan
Omar Marouf
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
Tel: (973) 538-0800
Email: MOMullan@RIKER.com
          Omarouf@RIKER.com
*Attorneys for Defendant Melissa Data Corporation*

15