Michael P. O'Mullan
Omar Marouf
**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, New Jersey 07940-1051
973.538.0800
momullan@riker.com
omarouf@riker.com
*Attorneys for Defendant Melissa Data Corp.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>Plaintiffs,<br>vs.<br><br>MELISSA DATA CORP., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br>Defendants. | Case No. 1:24-cv-04292-HB |

**DEFENDANT MELISSA DATA CORP.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION....1

BACKGROUND....2

I. Procedural History....2

II. Atlas's Request for Consent and Motion for Leave to Amend....5

ARGUMENT....8

I. The Proposed Amendment Would Unduly Prejudice Melissa....9

A. Roughly 6,300 New Assignors Means Roughly 6,300 New Sets of Facts....9

B. The Timing Would Force Melissa to Redo Discovery Under Limits the Court Has Already Set....11

II. Atlas Unduly Delayed and Offers No Explanation....13

III. The New "Jurisdiction and Venue" Allegations Are Gamesmanship Rather than Conforming Changes....16

A. The Court Has Already Decided Personal Jurisdiction, and Its Ruling Makes Melissa's State of Mind Irrelevant to That Question....16

B. The New Allegations Are Aimed at the Pending Appeal, Not at Jurisdiction....18

IV. Atlas Has Not Identified Any Factual Basis for the New Claims....20

CONCLUSION....21

# Table of Authorities

Cases Page(s)

Arthur v. Maersk, Inc.,
434 F.3d 196 (3d Cir. 2006) ....................8, 13

Atlas Data Priv. Corp. v. True Software Scandinavia AB,
2026 WL 2517177 (D.N.J. Aug. 26, 2026) ....................15

Atlas Data Priv. Corp. v. We Inform, LLC,
362 A.3d 665 (N.J. 2026) ....................4, 5, 15, 17, 18

Bjorgung v. Whitetail Resort, LP,
550 F.3d 263 (3d Cir. 2008) ....................13, 14

Calder v. Jones,
465 U.S. 783 (1984) ....................1, 3, 4, 16, 17

CMR D.N. Corp. v. City of Philadelphia,
703 F.3d 612 (3d Cir. 2013) ....................13

Cureton v. Nat'l Collegiate Athletic Ass'n,
252 F.3d 267 (3d Cir. 2001) ....................9, 12, 13, 15, 19

Est. of Oliva ex rel. McHugh v. New Jersey,
604 F.3d 788 (3d Cir. 2010) ....................14

Est. of Wiley v. City of Newark,
2022 WL 3013075 (D.N.J. July 29, 2022) ....................14

Ford Motor Co. v. Montana Eighth Judicial District Court,
592 U.S. 351 (2021) ....................3, 4, 17

IMO Indus., Inc. v. Kiekert AG,
155 F.3d 254 (3d Cir. 1998) ....................17

In re Estate of Stockdale,
953 A.2d 454 (N.J. 2008) ....................19

IQVIA Inc. v. Veeva Sys., Inc.,
2022 WL 111059 (D.N.J. Jan. 12, 2022) ....................14

Lorenz v. CSX Corp.,
1 F.3d 1406 (3d Cir. 1993) ....................8

MSP Recovery Claims, Series LLC v. Celgene Corp.,
2024 WL 1327990 (D.N.J. Mar. 28, 2024) ....................9, 10

Ramos v. Walmart Inc.,
2025 WL 397001 (D.N.J. Jan. 31, 2025) ....................10, 11

Smart Pharmacy, Inc. v. Medco Health Sols., Inc.,
2014 WL 3735344 (D.N.J. July 29, 2014) ....................10

Stepanischen v. Merchs. Despatch Transp. Corp.,
722 F.2d 922 (1st Cir. 1983) ....................13

Sync Labs LLC v. Fusion Mfg.,
2016 WL 6802479 (D.N.J. Nov. 16, 2016), aff'd, 838 F. App'x 665 (3d Cir. 2020) ....................9

United States v. Pechiney Plastic Packaging, Inc.,
2013 WL 5436551 (D.N.J. Sept. 27, 2013) ....................9, 15

USX Corp. v. Barnhart,
395 F.3d 161 (3d Cir. 2004) ....................14

Statutes

N.J.S.A. 2A:15-5.13(c) ....................19

N.J.S.A. 56:8-166.1 ....................2, 4

Rules

Federal Rule of Civil Procedure 12(b)(2) ....................1, 3, 12

Federal Rule of Civil Procedure 12(b)(6) ....................12

Federal Rule of Civil Procedure 15(a)(2) ....................8

# INTRODUCTION

Plaintiff Atlas Data Privacy Corporation ("Atlas") claims that its proposed First Amended Complaint is a "narrow" update that adds "[n]o new claims, theories, or parties." Mem. at 1. The proposed pleading says otherwise. Thirty-two months after filing suit, after this Court resolved a contested motion to dismiss for lack of personal jurisdiction, and after the parties exchanged written discovery, Atlas seeks to grow its roster of purported assignors against Defendant Melissa Data Corp. ("Melissa") from approximately 18,587 to approximately 24,895. That is roughly 6,300 new claimants — an increase of about one-third — each bringing his or her own additional alleged nondisclosure requests, assignment, covered-person status, and question of whether and when Melissa acted. Calling that expansion an "update" does not make it one. Moreover, nothing in the proposed amendment or Atlas's Motion states the factual basis for the fundamental assertion that Melissa refused to comply with Daniel's Law with respect to any of the newly asserted claims.

The rest of the amendment is no more "narrow." Atlas describes a series of new paragraphs as "conform[ing] the jurisdictional, venue, and related allegations" to the action's post-removal posture. Mem. at 1. But personal jurisdiction over Melissa is not an open question. Melissa moved to dismiss under Rule 12(b)(2); after jurisdictional discovery, this Court denied the motion on March 18, 2026. Dkts. 107, 108. In doing so, the Court expressly held that the *Calder* "effects" test — the

personal jurisdiction framework under which a defendant's intent matters — does not apply to Daniel's Law claims, and it sustained jurisdiction under the traditional purposeful availment test instead. Dkt. 107 at 16–17, 20–23. Yet the new paragraphs allege that Melissa acted "knowingly and intentionally," "expressly aimed" its conduct at New Jersey, "understood" the consequences, and "purposefully collected" data. Proposed FAC ¶¶ 45–52. Those allegations are not needed for jurisdiction, and given the Court's ruling, they cannot be relevant to it. They are allegations of mens rea, and they arrive on the heels of the New Jersey Supreme Court's holding that Daniel's Law contains no mental state requirement for actual damages liability, and while the Third Circuit decides whether that regime is constitutional.

Because the proposed amendment would substantially prejudice Melissa, is the product of unexplained delay, and injects new issues that have nothing to do with jurisdiction or venue, the Motion should be denied.

# BACKGROUND

## I. Procedural History

Atlas and seven individual plaintiffs filed this action in the Superior Court of New Jersey, Morris County, on February 6, 2024, asserting a single claim under Daniel's Law, N.J.S.A. 56:8-166.1. Dkt. 1 ("Compl."). Atlas sued as the purported assignee of approximately 18,587 individuals who allegedly sent Melissa

nondisclosure notices through Atlas's "AtlasMail" service beginning in late December 2023. *See* Compl. ¶ 25. Melissa removed the action to this Court on March 27, 2024. Dkt. 1.

Although the Complaint did not identify the alleged assignors or the dates on which they purportedly sent nondisclosure notices to Melissa, on April 18, 2024, the Court ordered Atlas to provide a list of the alleged covered persons. *See* Dkt. 12. The spreadsheet Atlas produced in response in May 2024 purports to reflect that the notices were allegedly sent beginning in late December 2023, roughly six weeks before Atlas filed suit. Declaration of Omar Marouf, Esq. ("Marouf Decl.") ¶ 3. That spreadsheet identified almost 46,000 home addresses and telephone numbers that Atlas claimed were subject to nondisclosure notices. *Id.* ¶ 4. On June 17, 2025, the Court further ordered Atlas to provide Melissa "the dates the takedown notices were sent to the defendants as well as the 'category' of covered person into which each assignor fits." Dkt. 71.

Melissa then moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Dkt. 50. The Court permitted jurisdictional discovery, and Melissa served responses to jurisdictional interrogatories and document requests in May 2025. Atlas argued that jurisdiction existed under two theories: the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), and the traditional purposeful availment test of *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). Dkt. 99.

On March 18, 2026, the Court denied Melissa's motion, but it rejected Atlas's *Calder* theory. Dkts. 107, 108. The Court explained that "the *Calder* test cannot be satisfied unless a plaintiff alleges that the defendant has committed an intentional tort," and that "Daniel's Law does not require intentional wrongdoing for liability to attach." Dkt. 107 at 16–17. As a result, "plaintiffs have not met the first requirement of the *Calder* test," and "[s]pecific personal jurisdiction on this basis fails." *Id.* at 17. The Court instead found jurisdiction under *Ford*, based on Melissa's maintenance of data concerning New Jersey households — that is, on what the Court found to be Melissa's contacts with the forum and not its state of mind. *Id.* at 5–6, 20–23. Melissa subsequently answered the Complaint. Dkt. 111.

In addition, Melissa joined the consolidated facial challenge to Daniel's Law. The Court denied that challenge on November 26, 2024, and certified its ruling for interlocutory appeal, which the Third Circuit accepted. The Third Circuit then certified to the New Jersey Supreme Court the question of what mental state, if any, Daniel's Law requires. *Atlas Data Priv. Corp. v. We Inform, LLC*, 362 A.3d 665 (N.J. 2026). On August 12, 2026, the New Jersey Supreme Court held that "Daniel's Law does not contain a mental state requirement for actual damages liability under Section 166.1(c)(1)," while noting that the separate punitive damages provision "expressly includes the mental state requirement of 'willful or reckless disregard of the law.'" *Id.* Following that decision, Atlas argued to the Third Circuit that, at

minimum, its claims involving "willful or reckless disregard of the law" should proceed. *Atlas Data Priv. Corp. v. We Inform, LLC*, No. 25-1555, Dkt. 114 at 1 (3d Cir. Aug. 26, 2026). The Third Circuit's decision is forthcoming.

While the appeal has been pending, this Court has declined to stay these proceedings, and discovery has begun. *See, e.g.*, Dkt. 133 (denying motions to stay pending decision from Third Circuit). The Court's September 9, 2026 Order limits each side to 25 interrogatories and 30 requests for production, including subparts. Dkt. 137. The parties served written discovery on September 24, 2026, Marouf Decl. ¶ 5 & Exs. B–C, and Melissa served its objections and responses — including verified interrogatory answers — on November 3, 2026. *Id.* ¶ 6.

## II. <u>Atlas's Request for Consent and Motion for Leave to Amend</u>

On September 22, 2026 — two days before the parties exchanged written discovery demands — Atlas asked Melissa to stipulate to an amended complaint adding "additional assignees who sent nondisclosure requests to Defendants after the filing of the Complaint." Marouf Decl. ¶ 7 & Ex. A.

Melissa responded promptly. On September 25, 2026, Melissa's counsel asked Atlas to identify the additional assignors, the date and time each nondisclosure request was sent, and the basis for the amendment. *Id.* ¶ 8. Atlas sent a spreadsheet later that day and a draft amended complaint on September 28, 2026. *Id.* ¶ 9. On October 12, 2026, Melissa wrote again, noting that Atlas sought to add "thousands

of additional claims on behalf of thousands of additional assignors," which would "require extensive additional time and discovery," and that "neither the draft amended complaint nor the data [Atlas] provided suggests what . . . Atlas's basis is" for alleging that Melissa failed to comply with Daniel's Law. *Id.* ¶ 10. Atlas never answered. *Id.* ¶ 11. Four days later, on October 16, 2026, it filed this Motion. Dkt. 140.

The proposed First Amended Complaint against Melissa, attached as Exhibit D to the Livingston Declaration (with a redline at Exhibit H), raises the number of claimants for whom Atlas sues to "approximately 24,895." Proposed FAC ¶ 27.

According to an updated spreadsheet Atlas provided to Melissa on September 25, 2026, Atlas now seeks to add nondisclosure notices covering approximately 20,000 home addresses and telephone numbers, for a total of more than 65,500 home addresses and telephone numbers. Marouf Decl. ¶ 12. The updated spreadsheet claims that, for a significant number of the new home addresses and telephone numbers, the nondisclosure notices were sent in October 2024, with most of the related claims assigned to Atlas in 2024. *Id.* ¶ 13.

The Motion does not say when the new assignors' notices were sent or when their claims were assigned; it says only that the claims "accrued after the original Complaints were filed." Mem. at 5. Even so, the proposed pleading alleges, as to every assignor old and new, that Melissa "still refuse[s] to comply with Daniel's

Law." Proposed FAC ¶ 71. The Motion provides no allegations of Melissa's purported failure to comply with Daniel's Law beyond said conclusory statements bereft of any facts, and Melissa received no response from Atlas regarding the basis for such claims. Rather, without anything more than conclusory statements, Atlas hopes to use this proposed amendment as leverage and force Melissa to incur the expense of substantial additional discovery and, in essence, prove a negative.

The proposed amendment also adds allegations, under the heading "Jurisdiction and Venue," that appeared nowhere in the original Complaint. Among other things, they allege that Melissa:

- "*knowingly and intentionally* disclose[s] or re-disclose[s] on the Internet, or otherwise make[s] available" protected information "through affirmative acts and decisions regarding data collection, handling, storage, and disclosure," Proposed FAC ¶ 45 (emphasis added);
- disclosed information as a result of "*intentional conduct*, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence," *id.* ¶ 46 (emphasis added);
- "*expressly aimed* their conduct at New Jersey . . . *knowing* that the affected Covered Persons were located in New Jersey," *id.* ¶ 47 (emphasis added);
- "*knew, or reasonably should have known*, that the primary and foreseeable effects" of disclosure "would be felt in New Jersey," *id.* ¶ 50 (emphasis added);
- "*understood* that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey," *id.* ¶ 51 (emphasis added); and
- "*purposefully collected* sensitive personal information and other data concerning residents of New Jersey," *id.* ¶ 52 (emphasis added).

The Motion does not describe any of these allegations. It says only that they "conform" the Complaint to "this action's posture following its removal to this Court." Proposed FAC ¶ 6; Mem. at 1.

## ARGUMENT

While Federal Rule 15(a)(2) allows the court to freely give leave to amend "when justice so requires," courts maintain discretion to deny the motion upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993). This discretion warrants denial of Atlas's Motion. "[L]eave to amend must generally be granted **unless equitable considerations render it otherwise unjust**." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (emphasis added). Those considerations are present here. The amendment would add thousands of claim-specific disputes to a case already in discovery; Atlas offers no reason for having waited years to assert them; and the purported "jurisdiction and venue" allegations inject mens rea issues that this Court's personal jurisdiction ruling has already rendered irrelevant to jurisdiction. The Motion should be denied.

## I. <u>The Proposed Amendment Would Unduly Prejudice Melissa.</u>

Prejudice turns on "the hardship to the defendants if the amendment were permitted," including "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Prejudice is established where an amendment would "require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial." *United States v. Pechiney Plastic Packaging, Inc.*, 2013 WL 5436551, at *6 (D.N.J. Sept. 27, 2013). Atlas's proposed amendment would do both.

### A. <u>Roughly 6,300 New Assignors Means Roughly 6,300 New Sets of Facts.</u>

Atlas's claim that the new assignors add "no additional discovery burden beyond that inherent in the claims already pleaded," Mem. at 7, assumes the new claims are interchangeable with the old ones. They are not. Atlas made a strategic choice to aggregate thousands of individual claims under one caption, but each assignor's claim remains his or her own. *See Sync Labs LLC v. Fusion Mfg.*, 2016 WL 6802479, at *8 (D.N.J. Nov. 16, 2016) ("the assignee stands in the shoes of the assignor and assumes all of his or her rights"), *aff'd*, 838 F. App'x 665 (3d Cir. 2020). Atlas also inherits each assignor's discovery obligations. See *MSP Recovery Claims, Series LLC v. Celgene Corp.*, 2024 WL 1327990, at *3 (D.N.J. Mar. 28,

2024) ("It is well settled that the assignee of a claim bears the same discovery production obligations as if the assignor had initiated the litigation itself.").

For each new claimant, Melissa will have to determine whether the person was a "covered person" when the notice was sent; whether Melissa received a notice, and when; what information the notice concerned; whether that information was disclosed or made available after the ten-business-day period; whether the notice came from an authorized person; whether Atlas holds a valid assignment; and whether the assigned claims are subject to available defenses. While Atlas chose to aggregate each of the claims, those questions cannot be answered in bulk. Atlas's own updated spreadsheet shows the scale: it would add notices covering nearly 20,000 home addresses and telephone numbers to the ones already at issue. Marouf Decl. ¶ 12. As explained above, each of said claims will have a distinct posture during discovery and trial. *See MSP Recovery Claims*, 2024 WL 1327990, at *3; *see also Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*, 2014 WL 3735344, at *4 (D.N.J. July 29, 2014) (denying leave where amendment would expand discovery and require additional preparation).

Atlas's reliance on *Ramos v. Walmart Inc.*, 2025 WL 397001, at *10 (D.N.J. Jan. 31, 2025) (report and recommendation), only highlights the problem. Ramos found no prejudice where there were "no new claims, substantive allegations, or expansions of the putative class." *Id.* Atlas's amendment adds thousands of new

claims and a new set of substantive allegations about Melissa's state of mind. It is the opposite of Ramos.

### B. The Timing Would Force Melissa to Redo Discovery Under Limits the Court Has Already Set.

The burden is magnified by the stage of this case. Written discovery has been served and answered. Melissa's verified interrogatory answers relate to existing assignors and the existing allegations, *see* Marouf Decl. ¶ 6, and Melissa's own discovery requests were framed around the claimants identified in the original Complaint. If leave is granted, Melissa will have to revisit its investigation, its responses, and its offensive discovery to account for thousands of new claimants and an entirely new set of mens rea allegations. For example, Atlas's Request for Production No. 28 seeks:

> All Documents and data recording the receipt, routing, forwarding, filtering, tagging, quarantining, storage, archiving, or deletion of any communication from or on behalf of any Covered Person, Atlas, or AtlasMail, including the message headers and delivery metadata, the transport, message-tracking, and audit logs, the spam, junk, and quarantine logs, the filtering and rule-evaluation records, the delivery status notifications, and any record of acceptance, rejection, bounce, non- delivery, or automated reply, together with each folder, label, tag, queue, quarantine, junk or spam store, archive, journal, or vault in which any such communication was placed.

*See* Marouf Decl. ¶ 5 & Ex. C. The amendment would require Melissa to revisit and restart its investigation to include thousands of additional home addresses and phone

numbers related to the thousands of additional covered persons Atlas seeks to include in its amended complaint.

That problem is especially acute here because the Court's September 9, 2026 Order caps each side at 25 interrogatories and 30 requests for production, including subparts. Dkt. 137. Melissa calibrated its discovery to the case as pleaded. An amendment adding a third more claimants and claims — together with new allegations of knowledge and intent — would arrive after Melissa has already committed its allotment, leaving it either to seek relief from the Court's Order or to defend thousands of new claims without the discovery needed to test them. Either way, the amendment would "result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273.

Atlas responds that "merits discovery has not begun." Mem. at 6. That is wrong. Atlas filed its Motion after discovery requests were exchanged, and responses were served before the Motion could be decided. More fundamentally, the stage of discovery does not erase the stage of the case. This action has been pending since February 2024 and has included removal, a facial constitutional challenge, a Rule 12(b)(6) motion, a contested Rule 12(b)(2) motion with jurisdictional discovery, an interlocutory appeal, a certified question, multiple stay motions, an answer, and now merits discovery. Whatever the status of discovery, this litigation is not in its infancy.

## II. Atlas Unduly Delayed and Offers No Explanation.

A "significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013). The inquiry focuses "on the movant's reasons for not amending sooner," balanced against the burden of delay. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Arthur*, 434 F.3d at 204. As Atlas concedes, where a "considerable [amount of] time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" Mem. at 5 (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)).

Atlas has not carried that burden; it has not even tried. Its only explanation is that the new claims "accrued after the original Complaints were filed," so it "could not have pleaded them at the time." Mem. at 5. That explains why the claims were not in the February 2024 Complaint. It does not explain why Atlas waited until October 2026 to assert them. Atlas's own updated spreadsheet claims that a significant number of the new nondisclosure notices were sent to Melissa in October 2024, more than two years ago, with most of the related claims assigned to Atlas that

same year. Marouf Decl. ¶ 13. Atlas therefore knew of those additional claims before the Court ordered it on June 17, 2025 to provide Melissa with the dates on which the alleged assignors sent their notices. *See* Dkt. 71. Yet Atlas did not seek to add them then, and it offers no reason for waiting until October 2026. And Atlas was never in the dark: it operates the AtlasMail platform through which these notices were sent, and it obtained the assignments directly. Proposed FAC ¶¶ 32–37. Atlas had the facts as they occurred.

Courts in this Circuit deny leave in precisely these circumstances. In *USX Corp. v. Barnhart*, for example, the Third Circuit affirmed the denial of leave to amend where the plaintiffs "waited over three years to amend to contest these assignments and had notice of the assignments prior to filing both the original complaint and the first amended complaint." 395 F.3d 161, 169 (3d Cir. 2004); *see also Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (affirming denial where the claim "was or should have been apparent" earlier, "[i]rrespective of whether [the opposing party] would have suffered prejudice"); *Bjorgung*, 550 F.3d at 267 (affirming denial where movant "offered no excuse or explanation" for delay); *Est. of Wiley v. City of Newark*, 2022 WL 3013075, at *4 (D.N.J. July 29, 2022) (undue delay where plaintiff had possessed the underlying facts for more than a year and a half); *IQVIA Inc. v. Veeva Sys., Inc.*, 2022 WL 111059, at *5 (D.N.J. Jan. 12, 2022) (no "reasonable basis" for 17-month delay);

*Pechiney Plastic Packaging*, 2013 WL 5436551, at *8 (delay "undue" where movant "offer[ed] no explanation as to why it waited nearly a year"). Indeed, this Court recently denied Atlas leave to amend in another Daniel's Law action, finding the delay "undue" where Atlas sought to amend "well over two years after this action was initiated." *Atlas Data Priv. Corp. v. True Software Scandinavia AB,* 2026 WL 2517177, at *4 (D.N.J. Aug. 26, 2026). The same result is warranted here.

The absence of a court-ordered amendment deadline does not help Atlas. *See* Mem. at 5. The question is not whether a deadline has passed but why the movant failed to act sooner despite having the necessary information. *Cureton*, 252 F.3d at 273. Atlas's timing is also hard to reconcile with its repeated insistence, in opposing every stay request, that delay in these cases causes covered persons irreparable harm. Moreover, Atlas's proposed amended complaint inexplicably contends that Melissa "still refuse[s] to comply." *See* Proposed FAC ¶ 71. However, Atlas waited over two years before it sought the Court's leave to bring these additional claims, even though Atlas argues to the Third Circuit that a stay of discovery "will only further delay effective enforcement of covered persons' rights under the statute and allow Defendants to continue to expose Plaintiffs to a risk of potentially deadly and certainly irreparable harm on a daily basis." *Atlas Data Priv. Corp. v. We Inform, LLC*, No. 25-1555, Dkt. 123-1 (3d Cir. Sept. 14, 2026). A party truly focused on prompt enforcement would not sit on thousands of claims for two years and raise

them only after discovery requests had been exchanged. Had Atlas sought leave when the earlier assignments were obtained, the parties could have accounted for those claims from the outset of discovery. Its unexplained delay instead shifts the burden to Melissa.

## III. The New "Jurisdiction and Venue" Allegations Are Gamesmanship Rather than Conforming Changes.

### A. The Court Has Already Decided Personal Jurisdiction, and Its Ruling Makes Melissa's State of Mind Irrelevant to That Question.

Atlas says the new paragraphs merely "conform" the Complaint to the action's post-removal posture. Mem. at 1. In Melissa's case, that justification fails on its own terms. Personal jurisdiction over Melissa was the subject of a contested Rule 12(b)(2) motion, supported by jurisdictional discovery, that this Court decided nearly seven months before Atlas filed this Motion. Dkts. 107, 108. Atlas prevailed on that motion under the original Complaint. Nothing about the case's jurisdictional posture has changed since, and Atlas identifies no ruling or development that requires additional jurisdictional allegations.

More importantly, the Court's ruling forecloses any argument that the new allegations are jurisdictionally relevant. Atlas asked the Court to exercise jurisdiction under *Calder*'s "effects" test, which requires that "[t]he defendant committed an intentional tort" and "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."

Dkt. 107 at 13 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)). The Court rejected that theory because "the *Calder* test cannot be satisfied unless a plaintiff alleges that the defendant has committed an intentional tort," and "Daniel's Law does not require intentional wrongdoing for liability to attach." *Id.* at 16–17. The New Jersey Supreme Court's subsequent holding that Daniel's Law contains no mental state requirement for actual damages liability only confirms that conclusion. *We Inform*, 362 A.3d 665. The Court therefore sustained jurisdiction under *Ford*'s purposeful availment test, based on Melissa's forum contacts — its data on New Jersey households, its New Jersey users and revenue, and its marketing to New Jersey addresses. Dkt. 107 at 5–6, 20–23. Under that analysis, Melissa's knowledge and intent played no role.

The new paragraphs nonetheless track the *Calder* elements almost word for word. They allege that Melissa "expressly aimed" its conduct at New Jersey (¶ 47); that the "primary and foreseeable effects" of disclosure "would be felt in New Jersey" (¶ 50); that the alleged harms would be "concentrated in New Jersey" (¶ 51); and that Melissa acted "knowingly and intentionally" (¶ 45) through "intentional conduct" (¶ 46). Those allegations resurrect a jurisdictional theory the Court has already rejected as inapplicable to Daniel's Law. Because jurisdiction here rests on purposeful availment, Melissa's state of mind is irrelevant to personal jurisdiction. The allegations therefore serve no jurisdictional purpose at all. Rather, the mens rea

allegations Atlas seeks to add are aimed at the outcome of the appeal pending with the Third Circuit.

Venue and subject-matter jurisdiction offer no better justification. Melissa removed this action more than two and a half years ago, and diversity jurisdiction has been the basis of this Court's authority ever since. Dkt. 1. Updating the statutory basis for venue could be accomplished in a sentence. It does not require eight paragraphs describing what Melissa "knew," "understood," did through "intentional conduct," and "purposefully" did.

### B. The New Allegations Are Aimed at the Pending Appeal, Not at Jurisdiction.

Read for what they say rather than for the heading above them, the new paragraphs purport to plead mens rea. None of these allegations appeared in the original Complaint. And the proposed amendment incorporates all of them into its substantive Daniel's Law count. *See* Proposed FAC ¶ 68.

The timing explains the content. On August 12, 2026, the New Jersey Supreme Court held that Daniel's Law requires no mental state for actual damages liability, and reserved the question of the statute's constitutionality for the Third Circuit. *We Inform*, 362 A.3d 665. The Third Circuit is now deciding whether liability without fault can be squared with the First Amendment. Atlas has already told the Third Circuit that, at minimum, its claims involving "willful or reckless disregard of the law" should proceed. *Atlas Data Priv. Corp. v. We Inform, LLC*, No.

25-1555, Dkt. 114 at 1 (3d Cir. Aug. 26, 2026). Two months after the New Jersey Supreme Court ruled, Atlas seeks to load its pleading with allegations of intentional and knowing conduct. The evident purpose is to position this case for a post-appeal argument that some form of intent-based claim survives even if liability without fault does not. Inserting the words "New Jersey" into those allegations does not turn them into jurisdictional facts.

Allowing those allegations into the case now would impose precisely the "additional discovery, cost, and preparation to defend against new facts or new theories" that *Cureton* treats as prejudice. 252 F.3d at 273. They would open discovery into Melissa's knowledge, intent, and internal data practices — subjects the original Complaint never placed at issue — while the case awaits an appellate ruling that may render that discovery unnecessary or reshape it entirely. And they would not change the outcome of the appeal. The question before the Third Circuit is whether the statute, as the New Jersey Supreme Court has construed it, is constitutional; allegations about one defendant's state of mind cannot alter that answer. Nor would they preserve a freestanding punitive damages claim if the actual damages provision falls, because under New Jersey law an award of compensatory damages is a prerequisite to punitive damages. N.J.S.A. 2A:15-5.13(c); *In re Estate of Stockdale*, 953 A.2d 454, 473–74 (N.J. 2008). The new allegations thus serve only

to set up a further round of litigation after the appeal, and to expand discovery in the meantime.

Atlas cannot have it both ways. If the new paragraphs are, as Atlas claims, conforming changes with no substantive effect, they add nothing and should be omitted. If they are substantive, then Atlas's representation that the amendment adds "[n]o new . . . theories" is inaccurate, and the new issues they raise are reason enough to deny leave. Either way, they do not belong in this case.

## IV. Atlas Has Not Identified Any Factual Basis for the New Claims.

Atlas's proposed amendment is also an attempt to advance claims it has never substantiated. Melissa asked Atlas twice for the basis of the new claims. On September 25, 2026, Melissa asked for "more details about your basis for the amendment." Marouf Decl. ¶ 8 & Ex. A. On October 12, 2026, Melissa again noted that neither the draft pleading nor the spreadsheet disclosed any basis for alleging noncompliance, and asked Atlas to identify one. *Id.* ¶ 10. Atlas never responded; it filed this Motion four days later. *Id.* ¶ 11; Dkt. 140. The Motion is equally silent. It does not state any basis for the claim that Melissa has not complied with Daniel's Law before alleging that Melissa "still refuse[s] to comply" as to each of approximately 24,895 claimants. Proposed FAC ¶ 71. Atlas's blanket, unexplained conclusory allegation of continuing noncompliance as to thousands of new claimants is not a sound basis for expanding this litigation. Atlas's proposed amended

complaint is devoid of any allegations that suggest Melissa did not comply with Daniel's Law beyond mere conclusory statements that do not include any facts to support such assertion.

## **CONCLUSION**

For the foregoing reasons, Defendant Melissa Data Corp. respectfully requests that the Court deny Plaintiffs' Motion for Leave to File Amended Complaint as to this action.

Dated: November 23, 2026

**RIKER DANZIG LLP**

*/s/ Michael P. O'Mullan*
Michael P. O'Mullan
Omar Marouf
7 Giralda Farms, Suite 250
Madison, New Jersey 07940-1051
973.538.0800
momullan@riker.com
omarouf@riker.com
*Attorneys for Defendant Melissa Data Corp.*